IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
-----------------------------------------------------x
JONATHAN LOPEZ                          )
                                        )
              Plaintiff                 )    CIVIL ACTION NO. 14-257
                                        )
              v.                        )    JUDGE KIM R. GIBSON
                                        )
                                        )
CSX TRANSPORTATION, INC.                )
                                        )
              Defendant                 )
-----------------------------------------------------x
```

## PLAINTIFF'S RESPONSE IN OPPOSITION TO THE DEFENDANT'S MOTION FOR A PROTECTIVE ORDER

Plaintiff, Jonathan Lopez, by and through his attorney, Nicholas I. Timko, Esq., respectfully submits this Response in Opposition to the Motion for a Protective Order filed by the Defendant CSX Transportation, Inc. (hereafter referred to as "CSXT"), more specifically the video and stenographic transcripts of the depositions of CSXT employees involved in the collision in question.

Defendant CSXT has not met its *prima facie* burden to demonstrate the necessity of the Protective Order it seeks. It has not identified even a single trade secret nor piece of proprietary business information worthy of protection as required by the jurisprudence. Rather, Defendant CSXT improperly seeks to prevent the underlying facts of this case, which demonstrate that Defendant CSXT operated its train with blatant disregard for public safety, from any type of public or administrative scrutiny.

I.	FACTUAL BACKGROUND

On January 18, 2013 a train owned by the Defendant CSXT and operated by its agents and/or employees, while speeding through the Ferndale Avenue crossing, a public crossing, hit and ran over the Plaintiff Jonathan Lopez who was walking on the public sidewalk across the tracks. On November 3, 2014, Plaintiff Jonathan Lopez filed a Complaint in the Court of Common Pleas of the Commonwealth of Pennsylvania against the Defendant CSXT to recover compensation for the needless harm inflicted upon him, including the traumatic amputation of his left lower leg as a result of the carelessness and recklessness of the Defendant CSXT in the operation of its railroad and train. On or about November 26, 2014, the Defendant CSXT filed a petition to remove the action to the United States District Court for the Western District of Pennsylvania.

Discovery in this matter has been ongoing and the parties have exchanged extensive documentary discovery, except for the "locoCam" video which is the subject of a pending motion to compel.

Included among the relevant discovery demanded and exchanged by CSXT is the black box data, investigation report, track profile, timetables, certain locomotive repair records, certain operating rules, certain employee files regarding evaluations and training, certain safety training videos and certain training materials. CSXT sought no Protective Order for these materials and provided a privilege log with the discovery response advising that it had redacted the employee identification numbers.

The parties have engaged in numerous written and verbal communications in a good faith effort to complete discovery in a timely manner. Upon agreement between counsel, dates were selected and subpoenas served to depose the responding police officer, Ferndale Police Chief Arthur Boring, and Pennsylvania PUC inspector Timothy Wagner, who prepared a written report regarding the incident. These depositions were conducted on March 27, 2015 but the transcripts are not available yet..

Plaintiff advised that he wished to depose various employees of CSXT, namely the engineer, Richard A. Spicola, conductors, Jared A. Rhoads and Jack Churby, who were on board the train at the time of the collision and agent, Royce Caphart, who investigated the incident on behalf of CSXT and communicated with the governing police authority. CSXT agreed to produce these employees for a deposition and tentative dates were agreed as April 20 and 27, 2015, with the identity of specific witnesses for the respective dates pending advice from CSXT on their availabilities. On or about April 9, 2015 inquiry was made regarding the order of witness production, so that appropriate Notices of Deposition could be generated and served. During that communication Plaintiff advised that he intended to record the deposition by video and stenographic means and would so state in the forthcoming Notices of Deposition. Defense counsel raised a concern regarding the videotaping of the deposition and requested a blanket Protective Order. Plaintiff opposed a blanket Protective Order and suggested an interim agreement so that the depositions could proceed as scheduled and the issue of a protective order could be addressed by the court in a motion.

Despite Plaintiff's offer of a limited temporary agreement to prevent any interim disclosure until the Court ruled on the issue, CSXT responded with this motion and chose to

delay the scheduled depositions. Therefore, no actual Notices of Deposition were served as this dispute over the confidentiality issue arose and CSXT advised they would not proceed with the depositions as previously agreed, before such Notices could be served.

Despite the good faith efforts of counsel to reach an agreement regarding the confidentiality issue, the parties have clearly different positions. As outlined in the Plaintiff's Motion to Compel and supporting brief (Docket# 15 and 16), the Plaintiff has sought to avoid a blanket Protective Order, offering instead a comprehensive agreement (Docket 15, attachment 3) with appropriate safeguards to challenge unnecessary designations of confidentiality and needless secrecy in the proceedings, while limiting dissemination outside the litigation until such time as the Court ruled on the need for confidentiality of specific documents or information. Ironically, Defendant CSXT summarily rejected Plaintiff's proposal which would have obviated the need for this very motion, insisting instead on a rigid and restrictive blanket Protective Order and a course of action that has hindered the efficient completion of discovery, while failing to come forward with any compelling demonstration of good cause as to why such a blanket and rigid Protective Order is warranted or justified under existing law.

Plaintiff specifically and completely denies the wholly speculative and unfounded statements and allegations of CSXT ascribing nefarious motives to the Plaintiff's refusal to accede to its efforts to limit all access to the truth about what happened on January 18, 2013 at the Ferndale Avenue crossing. Plaintiff seeks discovery for the sole purpose of prosecuting the claims against CSXT. However, in so doing, Plaintiff should not be compelled to waive his First Amendment rights, nor the public's right to know the truth through access to the records, videos

and information which may, and likely will, become part of the public record at the trial of this action.

CSXT's recitation of the Local Rules in support of its speculative and baseless arguments, while personally offensive, only supports the Plaintiff's position that no Protective Order is required. Despite the speculation of CSXT, it is not Plaintiff's intention to sell, widely distribute or in any way improperly utilize the discovery in question. Plaintiff seeks to prosecute his claims and secure fair and just compensation under the law, without precluding the possibility that public knowledge of the truth at some point in the future might advance the cause of public safety.

CSXT has acknowledged that the discovery sought by the Plaintiff is proper under the Rules and relevant to the Plaintiff's claims. CSXT has acknowledged its willingness to provide the requested discovery and depositions, as long as the truth is kept secret. The video sought to be hidden merely shows the train approaching the crossing with a clearly visible and unaware pedestrian approaching the crossing while the train continues in excess of the speed limit until the pedestrian disappears from view and the train is stopped. It contains no trade secrets or proprietary information about the operation of the railroad, nor does it contain any graphic or gruesome images. The testimony of the witnesses sought to be kept secret will be substantially about the knowledge, skill, training, actions and/or inactions of CSXT and its employees in the operation of the railroad and train in question. CSXT insists on a preemptive blanket Protective Order, instead of a limited agreement to permit discovery to move forward, while protecting legitimate confidential personal and private data and information.

CSXT admits in disclosed training videos, for which it did not request a Protective Order, that its trains are involved in some 500 collisions per year, or more than one every single day, and in public documents acknowledges that in 2013 there were 207 fatalities reported (see Exhibit 3). CSXT's trains, at times, carry hazardous materials and represent a potential danger to the communities through which they operate.

Documents and records exchanged in discovery to date establish that the train in question was exceeding the 10 mph speed limit for the crossing when it struck the plaintiff. The responding police officer, Chief Arthur Boring testified that he understood the train was operating within the speed limit and that he expected CSXT personnel to advise him of any relevant information obtained in their investigation (see Exhibit 1-Police Report, last line). As of the date of his deposition, he still had not been advised that the train was exceeding the speed limit nor was he shown the video. Likewise, Pennsylvania PUC inspector Timothy Wagner (see Exhibit 2-Wagner Report, second paragraph) testified that he made inquiries of the CSXT trainmaster to obtain information about the speed of the train and no such information was provided to him. Wagner also testified that if evidence of excessive speed were known to the PUC it is likely an investigation would follow. The blanket Protective Order sought by CSXT would prevent the disclosure of the whole truth about the speed of the train and other circumstances to the governing authorities thereby potentially insulating CSXT and its employees from lawful oversight and enforcement activities and endangering the community.

CSXT has engaged in a nationwide public campaign to promote its corporate image and it publicly claims, "Our commitment to safety defines who we are at CSX. The passion and training of every employee allows us to provide the most reliable rail service to our customers

while keeping our communities safe above all else." ( see Exhibit 3)  By engaging in such a public image campaign, CSXT has placed its image and that of its employees squarely in the public eye, seeking to influence the public, including any potential jury pool. CSXT promotes its "Community Affairs and Safety Team" which is "...strategically placed throughout the CSX network and works closely with communities, employees and industry partners." (see Exhibit 3)

CSXT seeks to perpetuate a policy of secrecy to deny the public and appropriate authorities knowledge of the complete facts surrounding the numerous collisions that occur involving its trains. If, as CSXT asserts, it was not negligent or legally responsible for striking the Plaintiff with its train, then it should welcome public knowledge of the underlying facts and would suffer no harm or embarrassment. However, the very nature of its motion to prevent public knowledge of its actions and practices, and its claim to be harmed thereby, undercuts its argument for a blanket Protective Order.

CSXT has not delineated even a single document or record containing any trade secret or proprietary business information about its operations. The focus of CSXT's secrecy campaign is only the facts of the collision in question.

CSXT also seeks to prevent the Plaintiff from sharing knowledge and information about crossing collisions with any of the hundreds of people involved in train collisions, or from permitting counsel to share through continuing legal education or collaboration with other counsel representing such persons. Thus, CSXT is able to maintain a full database of knowledge, records and information about such collisions to defend all claims against it, while each individual plaintiff must utilize valuable court resources to secure the same knowledge and

discovery over and over again. In addition, it guarantees that only CSXT's self serving version of events is presented, unchallenged, to the public.

Plaintiff denies that a broad Protective Order is warranted or legally sound and asserts that the interests of public safety outweigh any interest CSXT has in covering up its dangerous activities and practices from appropriate government authorities and regulators.

II.        ARGUMENT

Under the applicable statutes, case law and circumstances herein no Protective Order is warranted, justified or required. CSXT seeks to conflate the various issues and misapply the relevant principles of law to support its unfounded claims of a need for a Protective Order.

A.  THE REQUESTED DISCOVERY IS RELEVANT AND MATERIAL

The Federal Rules of Civil Procedure Rule 26(b)(1) provides:

> **1) *Scope in General.*** Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

CSXT admits in its motion (¶18) that the discovery sought by Plaintiff is within the ambit of the Rule. Therefore, the arguments about Plaintiff's alleged motives have no bearing on the determination about whether the discovery is permissible. Upon review of the various

contentions, the central issue of the motion is simply whether a blanket Protective Order is warranted.

Further, "Rule 30(b)(3)(A) now provides that "[u]nless the court orders otherwise, testimony may be recorded by audio, audiovisual, or stenographic means."2 Accordingly, unless the court orders otherwise, a party may videotape a deposition *420 as a matter of right, as long as notice is given of the party's intention to do so." *Stern v Cosby*, 529 F. Supp. 2d 417 (S.D.N.Y. 2007).

B.   BURDEN IS ON CSXT TO DEMONSTRATE GOOD CAUSE

Rule 26(c) of the Federal Rules of Civil Procedure requires a showing of "good cause" for a Protective Order. The burden of establishing good cause is on the party seeking secrecy, here the Defendant CSXT. See *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1130 (9th Cir. 2003) (burden rests on party asserting good cause to show specific prejudice or harm in absence of protective order.); *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1122 (3d Cir. 1986) *(Cipollone I)* ("the burden of persuasion fell on the party seeking the protective order"); *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973), cert. denied, 414 U.S. 1162 (1974) (movant's burden to specifically demonstrate necessity for protection order). See also, *Foltz,* 331 F.3d at 1130 ("A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted."); *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir. 1995) ("'Good cause' is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury. Broad allegations of harm, unsubstantiated by specific examples, however, will not suffice."); *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, at 787-91 (3d Cir. 1994) (same and also setting forth various factors that may be considered in weighing good cause balance); *Beckman Indus., Inc. v. Int'l Ins. Co.,* 966 F.2d 470, 476 (9th Cir. 1992), cert. denied, 506 U.S. 868 (1992) (same as *Pansy*); *Anderson v. Cryovac Inc.,* 805 F.2d 1, 7 (1st Cir. 1986) (citing 8 CHARLES ALAN WRIGHT & ARTHUR

R. MILLER, FEDERAL PRACTICE AND PROCEDURES §2035, at 264-65 (1970)) ("A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements."); *Gen. Dynamics Corp.*, 481 F.2d at 1212; *In re Agent Orange Prod. Liab. Litig.*, 104 F.R.D. 559, 571 (E.D.N.Y. 1985); *United States v. International Business Machines Corp.*, 67 F.R.D. 40, 46 (S.D.N.Y. 1975).

CSXT seeks to turn the law on its proverbial head by arguing (see ¶32) that "Plaintiff has failed to set forth any sufficient reason why 'unrestricted' use of the video deposition is necessary order to prosecute his claims in this case." CSXT further argues (¶44) that Plaintiff needs a rational needs to assert his First Amendment rights. CSXT offers no law to support its argument, because none exists. The law is clear that Plaintiff is not required to make any showing at all to oppose a Protective Order, unless and until CSXT meets the initial burden of good cause. Especially when, as in this case, Defendant has conceded the relevance of the requested discovery.

### C. CSXT HAS FAILED TO SATISFY ITS BURDEN

A simple assertion of "trade secrets" or "confidential" commercial information should not receive automatic protection. "As a general rule, courts 'have not given trade secrets automatic and complete immunity against disclosure, but have weighed their claim to privacy against the need for disclosure.'" *Smith v. BIC Corp.*, 869 F.2d 194, 199 (3d Cir. 1989). CSXT has proffered case law on the issue of trade secrets, but offers no specific trade secrets it seeks to secure.

Further, a corporation has no right to privacy. *Browning-Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 284 (1989).

The interest of the public in having access to data and video revealing the actions of the Defendant CSXT in operating its trains in the community must also be considered by the court, regardless of any showing of "good cause." See, *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011); see also *Shingara v. Skiles*, 420 F.3d 301, 308 (3d Cir. 2005) ("[A] court always must consider the public interest when deciding whether to impose protective order.") *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d 476, 483 (3d Cir. 1995) ("[T]he analysis [of good cause] should always reflect a balancing of private versus public interest.").

The defendant seeks to limit the sharing of data and information by the Plaintiff with other similarly situated parties. Such restrictions run counter to efforts to streamline discovery and conserve judicial resources. See *United States v. Hooker Chem. & Plastics Corp.*, 90 F.R.D. 421, 426 (W.D.N.Y. 1981). In *Williams v. Johnson & Johnson*, 50 F.R.D. 31, 32 (S.D.N.Y. 1970) the court quoted the *Fed. R.C.P.1* in holding;

> On its face, such collaboration [between similarly situated litigants] comes squarely within the aims laid out in the first and fundamental rule of the Federal Rules of Civil Procedure: 'These rules . . shall be construed to secure the just, speedy and inexpensive determination of every action.' Thus, there is no merit to the all-encompassing contention that the fruits of discovery in one case are to be used in that case only.

(a)     PRE-TRIAL PUBLICITY

Without any specific evidence to back its allegations, CSXT asserts that Plaintiff intends to use information, documents and video is some nefarious effort to unduly influence the jury pool by some manner of pre-trial publicity. This false assertion is wholly and completely belied

by the Plaintiff's pending motion to compel and the Plaintiff's proposed agreement regarding confidential information. If it was in fact Plaintiff's intention to disseminate video and documents obtained in discovery, why would Plaintiff offer to enter in to such an agreement which would permit CSXT to unilaterally obstruct any such effort?

Further, LCvR 83.1, cited by CSXT directly undermines this argument. Since LCvR 83.1 directly address the very issue of concern to CSXT, no Protective Order is required and would in fact be superfluous.

    (b)    REQUEST FOR A PROTECTIVE ORDER IS PREMATURE

In *Burgess v Town of Wallingford,* 2012 WL 4344194(D.Conn.2012), a case cited by CSXT in support of its motion, the court held at page 12:

> Lastly, court protection of future deposition transcripts has been held to be "premature," in that materials subject to protection must be dealt with as circumstances of particular depositions arise. *See, e.g., Patterson v. Burge,* No. 03 C 4433, 2007 WL 2128363, at *4 (N.D.Ill. July 24, 2007)(request for a broad protective order as to "all future depositions" held to be "too broad" and "premature" where future protection would be "dealt with based on the circumstances relating to that deposition").

This finding is especially compelling is since at the time of the decision the plaintiff in *Burgess* had already posted on his website and blogs information including a written transcript of a prior deposition as well as other information, in violation of an Order of the court. Nevertheless, the decision rejects a blanket Protection Order and directs only the removal of personal information and data from the web site and blogs. The court further found at page 11, distinguishing *Paisley Park Entertainment, Inc. v Uptown Productions,* 54 F.Supp. 2d 247(S.D.N.Y 1999):

> Case precedent suggests that even when a party admittedly seeks to publicly embarrass his opponent, no protection should issue absent evidence of "substantial embarrassment"

or harm. *See, e.g., Flaherty v. Seroussi,* 209 F.R.D. 295, 299 (N.D.N.Y.2001)(even where plaintiff admitted his intention to use the local media to personally embarrass the defendant mayor in front of his constituents,*i.e.*, to figuratively knock his "teeth down his throat" during deposition questioning, "[t]he mere fact that some level of discomfort, or even embarrassment, may result from the dissemination of [mayor's] deposition testimony [was] not in and of itself sufficient to establish good cause to support the issuance of protective order.").*See also Pia v. Supernova Media, Inc.,* 275 F.R.D. 559, 561–62 (D.Utah 2011) (entertainment attorney failed to establish "good cause" for issuance of protective order to restrict dissemination of transcripts and tapes of his deposition testimony because even if public dissemination might "cause him some level of discomfort," there was no "legitimate concern that any deposition in this case [would] be used for commercial or other private [financial] pursuits").

(c)   PROTECTIVE ORDERS SHOULD BE LIMITED IN SCOPE

Any Protective Order in this case should be narrowly defined and limited to only those documents, records or information with trade secrets or personal data which has been specifically defined. Recognizing the important First Amendment rights implicated in any Protective Order, the Supreme Court of the United States in *Seattle Times v Rhinehart,* 467 U.S. 20 (1984) affirmed a limited Protective Order covering only that pre-trial discovery material pertaining to financial affairs of certain parties, names and addresses of members of the organization, clients and contributors to the organization. This limited order was arrived at after application of a balancing test, weighing First Amendment rights against the actual documented harm (see *Seattle Times,* at page 26) being suffered by the party, including defamatory and harassing phone calls and threatened physical harm, as well as incidents at its headquarters of attacks, assaults and threats to members by anonymous people. As the concurrence of Justices Brennan and Marshall makes clear, *Seattle* at page 38:

> As the Court acknowledges, before approving such protective orders, "it is necessary to consider whether the 'practice in question [furthers] an important or substantial governmental interest unrelated to the suppression of expression' and whether 'the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental *38 interest involved.' " Ante, at 2207 (quoting Procunier v. Martinez, 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974)).

and,

> Given this finding, the court approved a protective order limited to "information ... regarding the financial affairs of the various [respondents], the names and addresses of Aquarian Foundation members, contributors, or clients, and the names and addresses of those who have been contributors, clients, or donors to any of the various [[[respondents]." Ante, at 2204, n. 8.

Likewise in *Steede v General Motors, LLC*, 2012 WL 2089761 (W.D. Tenn. 2012), the court issued a limited Protective Order covering only technical and highly commercially valuable documents including designs, engineering and assembly drawings, tests and reports for the production of a vehicle.

In *Zenith Radio Corporation v Matsushita Electric Industrial Co., Ltd., et. al.*, 529 F. Supp. 866 (E.D. Pa. 1981), the court applied the First Amendment balancing test as later adopted by the Supreme Court in *Seattle Times*. In so doing, the court nevertheless lifted a previously consented to broad Confidentiality Agreement (not unlike the agreement originally proposed by the Plaintiff Lopez herein and rejected by CSXT) and thereby released a large quantity of previously designated confidential documents. The court maintained a Protective Order only with regard to specific documents and information involving commercially value data and trade secrets.

And finally, in *Mitchell v Home Depot*, 2012 WL 2192279 (W.D. Ky 2012) the court rejected Home Depot's assertions that its safety materials were confidential trade secrets. In reviewing various decisions on the issue from other courts confronted with the Home Depot claims of confidentiality, the *Mitchell* court cited to a decision in *Labbe v Home Depot U.S.A., Inc.*, 2007 WL 1074114 (Sup. Ct. Mass. Mar. 19, 2007) at *4 in denying a broad Protective Order stating:

> Rather, it is apparent to the Court that the defendant's motivation to insist on a confidentiality agreement is more prosaic. It is to limit the dissemination of information in order to reduce access to it by present or future claimants with regard to accidents in the defendants' other stores who would then seek to leverage it to their advantage. While the Court is mindful of the abuse which excessive discovery can foment (a routine slip and fall cannot be a fair predicate for unlimited access by counsel to the details of the claims history of a national chain's hundreds-or thousands-of stores), the fact that information disclosed in one case is shared among the plaintiffs' bar elsewhere is not a valid reason to restrict discovery. That is because the public has a right to knowledge of potential risks uncovered in the course of judicial proceedings. As stated by Judge Connolly of this Court in a products liability case where he was asked by joint stipulation of counsel to approve a confidentiality agreement and impoundment order incident to settlement:

> Here, such an impoundment order would serve as a secrecy mechanism that conceals information of harmful products or practices from the public and function as a claim avoidance and claim management tool. Private defendants, especially manufacturers, frequently insist upon the use of confidentiality agreements and protective orders as a means of preventing dissemination of such important information, information which reveals the hidden dangers to other potentially affected members of the public. The insistence upon confidentiality agreements is often quid pro quo for the payment of monetary damages in the settlement of a case.... Without question, the "general principle of publicity" here outweighs any proffered "privacy" reasons.

*5 *Gleba v. Daimler Chrysler Corp.*, 2001 WL 1029678 (Mass.Super.2001).

Therefore, the information and material sought to be keep secret by CSXT which inplicates public safety should not be subject to any Protective Order.

**WHEREFORE,** it is respectfully requested that the Defendant's Motion for a blanket Protective Order be denied in its entirety, together with such other and further relief as it is just and proper.

Dated:  New York, New York
        April 20, 2015

                                                **KAHN GORDON TIMKO & RODRIQUES, P.C.**

                                                By: Nicholas I. Timko, Esq.
                                                *Attorneys for Plaintiffs*
                                                20 Vesey Street, Suite 300
                                                New York, New York 10007
                                                (212) 233-2040
                                                nitimko@kgtrpc.com