**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JONATHAN LOPEZ,** | ) | **CIVIL ACTION NO. 3:14-257** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CSX TRANSPORTATION, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

This case arises from personal injuries suffered by Plaintiff Jonathan Lopez when he was hit by Defendant CSX Transportation, Inc.'s train.  Presently before the Court in this matter are three discovery motions:  (1) Defendant's motion to compel Plaintiff's medical records (ECF No. 23); (2) Plaintiff's motion to compel a Federal Rule of Civil Procedure 30(b)(6) deposition of Defendant (ECF No. 26); and (3) Defendant's cross-motion for a protective order (ECF No. 29).  For the reasons explained below, the Court will **GRANT in part and DENY in part** Defendant's motion to compel Plaintiff's medical records, will **GRANT in part and DENY in part** Plaintiff's motion to compel a Federal Rule of Civil Procedure 30(b)(6) deposition of Defendant, and will **GRANT in part and DENY in part** Defendant's cross-motion for a protective order.

### II.    Jurisdiction and Venue

The Court has jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441.  Venue is proper under 28 U.S.C. § 1391.

## III.    Background

This case involves Plaintiff's claim against Defendant for negligence resulting in personal injuries.  According to the complaint, on January 18, 2013, Plaintiff was walking on the sidewalk adjacent to Ferndale Avenue in Cambria County.  (ECF No. 1-2, Compl. ¶ 11.)  At approximately 1:00 p.m., a CSX Transportation freight train struck Plaintiff.  (*Id.* ¶ 13.)  As a result, Plaintiff suffered severe personal injuries.  (*Id.* ¶¶ 13-14.)  Plaintiff initiated this action by filing a complaint in the Court of Common Pleas of Cambria County on November 3, 2014, alleging a single claim for negligence against Defendant.  (ECF No. 1-2.)  On November 26, 2014, Defendant removed the matter to this Court.  (ECF No. 1.)  Defendant then filed an answer denying liability.  (ECF No. 4.)

This Court held an initial Rule 16 scheduling conference on February 3, 2015, (*see* ECF No. 10), and entered an initial scheduling order (ECF No. 11), after which the parties commenced discovery.  On July 22, 2015, Defendant filed a motion to compel Plaintiff's medical records, along with a brief and exhibits in support of the motion.  (ECF No. 23.)  Plaintiff filed a response to the motion, along with exhibits, on July 24, 2015.  (ECF No. 24.)  Then, on August 26, 2015, Plaintiff filed a motion to compel the Rule 30(b)(6) deposition of Defendant, along with a brief and exhibits in support of the motion.  (ECF Nos. 26, 28.)  Defendant filed a response to the motion, along with exhibits, on September 2, 2015.  (ECF No. 29.)  Within its response, Defendant included a cross-motion for a protective order, to which Plaintiff did not respond.  (*Id.*)  The motions have been fully briefed and are now ripe for disposition.  The Court will separately address each motion below.

IV.     Applicable Law

As will be explained in more detail below, the pending motions involve the parties' dispute over compelling discovery and over protective orders. The Court will briefly set forth the legal principles governing compelling discovery and the entry of protective orders in discovery matters.

A.      Motions to Compel Discovery, Rule 26

Generally, materials that are relevant to an issue in a case are discoverable unless they are privileged. Rule 26 explains the scope of discovery:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

FED. R. CIV. P. 26(b)(1). While the scope of discovery under the Federal Rules is broad, "this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). Indeed, Rule 26(b)(1) imposes "two content-based limitations upon the scope of discovery: privilege and relevance." *Trask v. Olin Corp.*, No. 12-CV-340, 2014 U.S. Dist. LEXIS 28362, at *40 (W.D. Pa. 2014).

Even relevant discovery may be limited by a court "if the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the

action and the importance of the discovery in resolving the issues." *Id*. at *41 (citing FED. R. CIV. P. 26(b)(2)(C)). "In evaluating whether a party is entitled to discovery, the trial court should not simply rule on some categorical imperative, but should consider all the circumstances of the pending action." *Id.* at *44. Here, Defendant has asserted that Plaintiff's motion to compel a Rule 30(b)(6) deposition would violate both the work-product doctrine and the attorney-client privilege.

***Work-Product Doctrine***

The work-product doctrine is governed by federal law, even in diversity cases. *Highland Tank & Mfg. Co. v. PS Int'l, Inc.*, 246 F.R.D. 239, 244 (W.D. Pa. 2007). In *Hickman v. Taylor*, the Supreme Court examined the work-product doctrine and adopted "the general policy against invading the privacy of an attorney's course of preparation." *Hickman v. Taylor*, 329 U.S. 495, 512 (1947). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). The doctrine recognizes the reality that attorneys must often "rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial." *Id*. Thus, the doctrine also protects materials prepared by an attorney's agent. *Serrano v. Chesapeake Appalachia, LLC*, No. 2:12-CV-1678, 2014 U.S. Dist. LEXIS 29167, at *9 (W.D. Pa. Mar. 6, 2014).

Rule 26(b)(3) sets forth the work-product doctrine, which provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative

(including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."

FED. R. CIV. P. 26(b)(3)(A). However, those materials may be discovered if: (1) they are otherwise discoverable under Rule 26(b)(1); and (2) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. FED. R. CIV. P. 26(b)(3)(A)(i)-(ii). A document is considered to be prepared "in anticipation of litigation" when "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979) (internal quotations omitted).

### *Attorney-Client Privilege*

The attorney-client privilege is one of the oldest privileges for confidential communications known to the law. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.*; *Nesselrotte v. Allegheny Energy, Inc.*, 242 F.R.D. 338, 340 (W.D. Pa. 2007).

Under Rule 501 of the Federal Rules of Evidence, a district court exercising diversity jurisdiction applies the law of privilege from the state in which it sits. *Samuelson v. Susen*, 576 F.2d 546, 549 (3d Cir. 1978). Pennsylvania defines the attorney-client privilege by statute: "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial

by the client."  42 PA. CONS. STAT. ANN. § 5928; *see also Koen Book Distributors, Inc. v. Powell, Trachtman, Logan, Carrle, Bowman & Lombardo, P.C.*, 212 F.R.D. 283, 284 (E.D. Pa. 2002).

The Third Circuit has explained the required elements to establish the attorney-client privilege under Pennsylvania law as follows:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Montgomery Cnty. v. MicroVote Corp.*, 175 F.3d 296, 301 (3d Cir. 1999) (internal quotations omitted).

## B.      Protective Orders, Rule 26

As discussed above, Rule 26(b)(1) establishes the contours of discovery, providing that "[p]arties may obtain discovery of any matter, not privileged, that is relevant to any party's claim or defense."  FED. R. CIV. P. 26(b).  The rule further states that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Thus, it is well-settled that Rule 26 establishes a liberal discovery policy.  *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Hickman*, 329 U.S. at 507-08.

Nevertheless, this Court is empowered to issue an order to protect a person from "annoyance, embarrassment, oppression, or undue burden or expense," if there is good cause to issue such an order. FED. R. CIV. P. 26(c)(1);[1] *see also EEOC v. Grane Healthcare Co.*, No. 3:10-CV-250, 2013 U.S. Dist. LEXIS 35869, at *5-6 (W.D. Pa. Mar. 15, 2013). The party seeking the protective order bears the burden of showing that it is particularly necessary to obviate a significant harm. *See Trans Pacific Ins. Co. v. Trans-Pacific Ins. Co.*, 136 F.R.D. 385, 391 (E.D. Pa. 1991); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786-87 (3d Cir. 1994). "[T]he party seeking the protective order must show good cause by demonstrating a particular need for protection. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986); *Masciantonio v. United States*, No. 3:14-MC-35, 2014 U.S. Dist. LEXIS 173959, at *8 n.6 (W.D. Pa. Dec. 17, 2014). "'Good cause' is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury." *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).

---

[1] Rule 26(c)(1) provides, in relevant part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]

*Id.*

The Third Circuit has identified "several factors, which are neither mandatory nor exhaustive, that may be considered in evaluating whether 'good cause' exists:"

1. whether disclosure will violate any privacy interests;

2. whether the information is being sought for a legitimate purpose or for an improper purpose;

3. whether disclosure of the information will cause a party embarrassment;

4. whether confidentiality is being sought over information important to public health and safety;

5. whether the sharing of information among litigants will promote fairness and efficiency;

6. whether a party benefitting from the order of confidentiality is a public entity or official; and

7. whether the case involves issues important to the public.

*Id.* (citing *Pansy*, 23 F.3d at 787-91). Further, the Court must balance the private interests at issue against any public interests, based upon the specific circumstances of the case. *Id.*; *see also Miller v. Allstate Fire & Cas. Ins. Co.*, No. 3:07-CV-260, 2009 U.S. Dist. LEXIS 21225, at *6-7 (W.D. Pa. Mar. 17, 2009). With these legal principles in mind, the Court will evaluate the parties' respective motions.

## V.    Discussion

### A.    Defendant's Motion to Compel

Defendant has filed a motion to compel discovery. (ECF No. 23.) Specifically, Defendant seeks to compel the production of "Plaintiff's entire medical history." (*Id.* ¶ 10.) In support of its argument, Defendant notes that Plaintiff alleged in his complaint that he sustained severe injuries to his left leg, as well as emotional distress, anxiety, and

depression. (*Id.* ¶¶ 5-6 (citing ECF No. 1-2 ¶¶ 15-16(a)-(h)).) Defendant asserts that, in responding to its discovery requests, Plaintiff objected to its requests as being overbroad and only allowed Defendant to obtain medical records following the January 18, 2013, accident. (*Id.* ¶ 10.) Defendant argues that "[b]ecause Plaintiff has placed both his physical and mental condition at issue through initiation of this action, [it] is entitled to complete medical records regarding Plaintiff's medical conditions — both past and present." (*Id.* ¶ 26.) Defendant further contends that "Plaintiff's medical records are relevant to allow [it] to prepare its defense to the allegations raised by Plaintiff regarding his medical condition and damages incurred." (*Id.* ¶ 28.) Specifically, Defendant argues that Plaintiff's entire medical history is necessary for it to determine: (1) "the extent of Plaintiff's alleged injuries;" (2) "the treatment(s) required for Plaintiff's alleged injuries;" (3) "whether Plaintiff properly adhered to any treatment plan(s) prescribed for Plaintiff's alleged injuries;" (4) "whether Plaintiff suffered from any pre-existing conditions that may bear upon Plaintiff's alleged injuries;" and (5) "whether Plaintiff's alleged injuries may be attributable to any cause other than the January 18, 2013[, i]ncident." (*Id.* ¶ 30.)

In response, Plaintiff states that he served Defendant with his Rule 26 initial disclosures on January 22, 2015, and included a disk containing copies of "extensive medical records." (ECF No. 24 at 2.) Plaintiff argues that he "was questioned extensively regarding his medical condition and injuries" at his deposition and further asserts that Defendant "has presented no good faith basis for seeking, as it does, a blank, open ended medical authorization to conduct a fishing expedition regarding Plaintiff's medical care over the [twenty-five] years from his birth to the collision." (*Id.* at 3.)

As noted above, the Federal Rules of Civil Procedure permit discovery of "any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). Plaintiff's medical records are clearly relevant to the claim at issue in this case; indeed, the parties agree that the records are subject to discovery. However, while the federal rules mandate a broad, permissive scope of discovery, "'discovery, like all matters of procedure, has ultimate and necessary boundaries.'" *Oppenheimer Fund, Inc.*, 437 U.S. at 351 (1978) (quoting *Hickman*, 329 U.S. at 507). The Supreme Court has explained:

> In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied. Likewise, discovery should be denied when a party's aim is to delay bringing a case to trial, or embarrass or harass the person from whom he seeks discovery.

*Id.* at 352, n.17 (citations omitted). Thus, courts are authorized to limit the scope of discovery, as necessary, to prevent an abuse of the discovery process.

Plaintiff has placed his mental health at issue because he alleges that he "has in the past and will in the future suffer from nervous and emotional distress, anxiety and depression as a result of his injuries." (ECF No. 1-2 ¶ 16(a).) It is well settled that when a plaintiff places his mental health in controversy, his mental health medical records are subject to discovery because "the information and records clearly may become relevant to establish, depending on the evidence Plaintiff presents at trial to support a claim for emotional distress damages, that there were [other] causes . . . that caused [the] emotional distress." *Frazier v. Shinseki*, No. 2:12-CV-1035, 2014 U.S. Dist. LEXIS 55254, at *3 (W.D. Pa. Apr. 22, 2014) (internal quotations omitted). *See also Johnson v. Fed. Express Corp.*, No. 1:12-

CV-444, 2013 U.S. Dist. LEXIS 58478, at *9-10 (M.D. Pa. Apr. 24, 2013) (holding that the plaintiff's mental-health records were discoverable because "[i]t would be unfair to allow plaintiffs to unilaterally determine the amount of harm defendant caused, without allowing the defendant or the fact-finder to argue, consider and weigh other relevant factors of emotional stress") (internal quotations omitted); *Hall v. Berdanier*, No. 1:09-CV-1016, 2013 U.S. Dist. LEXIS 29689, at *4-5 (M.D. Pa. Mar. 5, 2013) (holding that the plaintiff's mental-health records were discoverable because he sought monetary compensation for "pain and suffering" in his complaint); *McKinney v. Del. County Mem. Hosp.*, No. 08-CV-1054, 2009 U.S. Dist. LEXIS 23625, at *17-18 (E.D. Pa. Mar. 20, 2009) (holding that the plaintiff's medical records regarding her mental health were discoverable because "[they] may show the presence of certain stress factors that pre-dated her conflict and resignation at work, or that other factors unrelated to this litigation occurred after her resignation, which may serve to mitigate or extinguish Plaintiff's emotional stress claims").

It is also well settled that "when a party places [his] mental status at issue in litigation, [he] waives the therapist-patient privilege" because "district courts in this Circuit have consistently espoused a broad view of waiver and held that a request for damages based on emotional distress, without more, places the plaintiff's mental state at issue and waives the privilege." *Frazier*, 2014 U.S. Dist. LEXIS 55254, at *3-4 (internal quotations omitted). *See also Johnson*, 2013 U.S. Dist. LEXIS 58478, at *8-9 ("[W]e have repeatedly held that when a plaintiff puts her mental and emotional health at issue in a civil lawsuit she implicitly waives the protection of the doctor-patient privilege with

respect to her medical records."); *Iwanejko v. Cohen & Grigsby, P.C.*, No. 2:03-CV-1855, 2005 U.S. Dist. LEXIS 22563, at *3-4 (W.D. Pa. Oct. 5, 2005) ("Iwanejko has waived the psychotherapist/patient privilege by placing his mental health and/or medical condition at issue, and therefore cannot use said privilege to shield records which pertain to his mental health and/or medical condition from discovery.").

In applying well-established law to the instant matter, the Court concludes that Plaintiff's complete medical history regarding his mental and emotional health is relevant to the issues raised by his claims and is therefore discoverable. Because Plaintiff has placed his mental health at issue in this case, he has waived any broad claim of privilege. The Court will therefore order Plaintiff to provide Defendant with his complete medical history regarding his mental and emotional health.

Along with his mental health, Plaintiff has placed his general physical health at issue by alleging that he "has sustained severe, serious and permanent personal injuries to his left leg, including but not limited to a traumatic below the knee amputation, together with multiple bruises, contusions, strains, and sprains of the body and limbs." (ECF No. 1-2 ¶ 15.) As Plaintiff notes, he responded negatively during his deposition when defense counsel asked whether, prior to January 18, 2013 — the date of the accident, he had "any physician in Johnstown or a medical provider [who he] would go to see on a regular basis." (ECF No. 24-4 at 8.) In his Rule 26 initial disclosures, Plaintiff provided Defendant with authorizations to obtain his medical records from eleven physicians and entities. (ECF No. 24-1 at 4.) However, Plaintiff asserts that Defendant's request for the complete

medical history regarding his physical health "over the [twenty-five] years from his birth to the collision" is overbroad. (ECF No. 24 at 3.) The Court agrees.

As the court in *Frazier* stated, the fact that Plaintiff has placed his general physical health at issue is not "an invitation to engage in a fishing expedition into Plaintiff's past medical history" because "[t]he scope of the inquiry must be limited." *Frazier*, 2014 U.S. Dist. LEXIS 55254, at *6. *See also McKinney*, 2009 U.S. Dist. LEXIS 23625, at *18 (explaining that "[t]he Court . . . will not allow Defendants to engage in a baseless fishing expedition against Plaintiff" because the scope of discovery "should be limited and confined to that information that is essential to a fair trial") (internal quotations omitted). The Court will therefore limit Defendant's discovery of Plaintiff's physical-health records to five years before the accident, or from January 18, 2008, through the present. *See, e.g., Santos v. Vallante*, No. 1:14-CV-842, 2014 U.S. Dist. LEXIS 152561, at *13 (M.D. Pa. Oct. 28, 2014) (in a case involving a traffic accident, limiting the reach of interrogatories regarding medical information to a period of one year prior to the accident). *See also Ehrlich v. Union Pac. R. Co.*, No. 13-CV-2142, 2014 U.S. Dist. LEXIS 143775, at *14 (D. Kan. Oct. 9, 2014) (in case involving a train accident, limiting the discovery of medical records to a period of five years prior to the accident; *Mattox v. City of Jefferson*, No. 1:04-CV-2257, 2006 U.S. Dist. LEXIS 69542 (N.D. Ohio Sept. 26, 2006) (after the plaintiff had multiple seizures when he was tased, the court held that the defendants "[were] not entitled to discover Plaintiff's entire medical history" but permitted them to "conduct discovery of Plaintiff's medical records as they pertain to his diagnosis and treatment for seizures, dating from three years prior to the date of the incident, to the present date").

Accordingly, the Court will grant in part and deny in part Defendant's motion to compel. The Court grants the motion to the extent that Plaintiff is directed to provide his complete medical history regarding his mental and emotional health to Defendant. The Court denies the motion to the extent that Defendant requests Plaintiff's complete medical history regarding his physical health. Rather, Plaintiff is directed to provide Defendant with the medical records regarding his general physical health from January 18, 2008, through the present. The order directing Plaintiff to provide Defendant with his medical records is subject to the following restrictions: Plaintiff's medical records are to be used solely for the instant litigation; the information from Plaintiff's medical records is not to be disseminated to individuals not involved in this case; and Defendant shall return all copies of Plaintiff's medical records to him at the conclusion of this litigation. The parties may memorialize these restrictions in a confidentiality agreement, if they so choose. Finally, Plaintiff shall provide Defendant with the aforementioned information by the discovery deadline of October 30, 2015 (ECF No. 27).

### B. Plaintiff's Motion to Compel and Defendant's Motion for Protective Order

Plaintiff has filed a motion to compel a Rule 30(b)(6) deposition. Specifically, Plaintiff states that he served a notice of a Rule 30(b)(6) deposition upon Defendant on May 28, 2015. (ECF No. 26 ¶ 7; ECF No. 26-2.) On July 20, 2015, Defendant served its objections to all thirty-four topics that were included in the notice. (ECF No. ¶ 7; ECF No. 26-4.) On July 22, 2015, Plaintiff requested a conference with Defendant to resolve issues regarding the scope of the deposition. (ECF No. 26 ¶ 8; ECF No. 26-5.) After the

conference, Defendant served correspondence on July 28, 2015, with proposed parameters for the deposition.  (ECF No. 26 ¶ 8; ECF No. 26-6.)  On July 30, 2015, Plaintiff served correspondence upon Defendant, wherein he stated that Defendant's correspondence "does not address all of the issues and agreements reached regarding the deposition" and that he preferred to "proceed with the deposition as you have outlined and address specific issues and objections, if any, as they arise, with the understanding that neither party has waived any right to seek additional discovery or object to same as issues arise." (ECF No. 26 ¶ 8; ECF No. 26-7.)

On August 19, 2015, Defendant wrote to memorialize the parties' August 4, 2015, conference call, wherein it stated that it would "identify corporate representative(s) based upon the limitations set forth in my July 28, 2015[,] correspondence, with the exception of those topics as further outlined herein."  (ECF No. 26-8.)  Specifically, Defendant stated that it "stands by its objection[s]" to deposition topic numbers nine and thirty-two.  (Id.) Plaintiff states that he filed this motion because "no agreement could be reached short of Plaintiff's full capitulation to the dictates of [Defendant] regarding a limited scope of the corporate deposition."  (ECF No. 26 ¶ 9.)  Plaintiff also notes that "[o]f particular significance, and most disagreement, is Deposition Topic number 9, which covers 'the positions, beliefs and opinions of [Defendant] regarding the claims in this action, including the affirmative defenses asserted.'"  (ECF No. 26 ¶ 10 (quoting ECF No. 26-2 ¶ 9).)  He therefore requests that the Court grant his motion and order Defendant to appear for a 30(b)(6) deposition with individuals who are prepared to testify regarding each topic set forth in his notice of a Rule 30(b)(6) deposition.  (ECF No. 26.)

In support of his motion, Plaintiff argues that the law does not support Defendant's suggestion that "it has the right to elect to answer written interrogatories in lieu of appearing for a deposition" because "an oral deposition is the preferred method of obtaining full and complete information about a party's opinions, beliefs and positions in the litigation." (ECF No. 28 at 2.) He further asserts that Defendant "offers no specific sound reason to limit the scope of the deposition" and seeks "to obstruct discovery." (*Id.*) Regarding Defendant's objection to topic number nine, Plaintiff notes that Defendant has asserted twenty-one affirmative defenses in its answer and asserts that he "should not be limited or precluded from inquiry about any defense raised." (*Id.* at 3.) Plaintiff argues that Defendant's contention that Plaintiff's inquiries should be addressed through interrogatories is unsupported by the law and requests that, should the Court determine that any written interrogatories are appropriate, "Defendant be compelled to provide full, thorough and complete responses." (*Id.* at 4-8.)

In response, Defendant disputes Plaintiff's contention that "'[o]n August 19, 2015, counsel for [Defendant] served correspondence advising that [it] had rejected [Plaintiff's] proposed compromise and insisted on dictating its own terms and conditions for the corporate deposition.'" (ECF No. 29 ¶ 17 (quoting ECF No. 26 ¶ 8).) Instead, Defendant states that it "accepted Plaintiff's compromise in almost all respects." (ECF No. 29 ¶ 17 (emphasis omitted).) Specifically, Defendant asserts that it "stand[s] by its objection" only to deposition topic numbers nine and thirty-two. (*Id.* ¶¶ 19, 21.) Regarding topic number nine, Defendant contends that the topic "calls for legal opinions and is protected by the doctrines of attorney-client privilege and attorney work-product" because Plaintiff seeks

information detailing Defendant's positions regarding the claims in this action, including the affirmative defenses that it asserts. (*Id.* ¶¶ 19-20.) Regarding topic number thirty-two, Defendant states that its Life Changing Index (LCI) data is not discoverable because the data applies only to employee injuries. (*Id.* ¶¶ 21-22.)

Within its response, Defendant has included a motion for a protective order and requests that the Court: (1) "limit the scope of Plaintiff's Notice and restrict the deposition of [its] corporate representative to the limitations previously agreed upon by the [p]arties;" (2) "preclude the deposition of [Defendant's] corporate representative with respect to deposition topic number [nine];" and (3) "preclude the deposition of [Defendant's] corporate representative with respect to deposition topic number [thirty-two]." (ECF No. 29 ¶ 24.) Plaintiff has not filed a response to Defendant's motion for a protective order.

The Federal Rules of Civil Procedure allow broad and liberal discovery, enabling "the parties to obtain the fullest possible knowledge of the issues and facts before trial." *Hickman*, 329 U.S. at 501; *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d. Cir. 1999) ("It is well recognized that the federal rules allow broad and liberal discovery."). As discussed above, Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." FED. R. CIV. P. 26(b)(1). The Federal Rules' relevancy requirement is to be

construed broadly, and material is relevant if it bears on, or reasonably could bear on, an issue that is or may be involved in the litigation. *Oppenheimer Fund, Inc.*, 437 U.S. at 350.

> Rule 30(b)(6) provides, in relevant part:
>
> Notice or Subpoena Directed to an Organization. In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization.

FED. R. CIV. P. 30(b)(6).

Initially, the Court will address Plaintiff's request that the Court order Defendant's corporate representative "to testify on its behalf with respect to each and every subject matter as set forth in . . . Plaintiff's [n]otice," (ECF No. 26 at 5), and Defendant's motion for a protective order to restrict the Rule 30(b)(6) deposition to the limitations upon which the parties previously agreed, (ECF No. 29 ¶ 24). The Court finds that Defendant has demonstrated good cause to limit the scope of the deposition. *See Glenmede Trust Co.*, 56 F. 3d at 483; *Pansy*, 23 F. 3d at 787–91.

Defendant's motion for a protective order regarding the scope of the deposition is sought for a legitimate purpose. Both parties agree that the Rule 30(b)(6) deposition is relevant to litigating the claims in this case, and, as discussed above, both parties agree that they spent "considerable time" and "engaged in extensive discussion" attempting to resolve issues related to the scope of the deposition. (*See* ECF No. 26 ¶¶ 8-9; ECF No. 29 ¶

18

28.)  In his July 30, 2015, correspondence, Plaintiff agreed to "proceed with the deposition as [Defendant] outlined."  (ECF No. 26 ¶ 8; ECF No. 26-7.)  In its August 19, 2015, correspondence, Defendant also agreed to "identify corporate representative(s) based upon the limitations set forth in my July 28, 2015[,] correspondence" but stated that it would stand by its objections to deposition topic numbers nine and thirty-two.  (ECF No. 26-8.)  Thus, although Defendant stood by its objections to only two deposition topics, Plaintiff now requests that the Court void the parties' previous agreement and order the deposition to proceed as set forth in Plaintiff's initial notice.

Defendant's motion to limit the deposition to the scope upon which the parties previously agreed will not cause any party embarrassment and will not violate any privacy interests.  Moreover, requiring the parties to abide by their previous agreement promotes fairness and efficiency.  Although Plaintiff only specifically mentions deposition topic number nine as being "[o]f particular significance, and most disagreement," (ECF No. 26 ¶ 10), the Court will separately address deposition topic numbers nine and thirty-two.  The remaining deposition topics will proceed according to the parameters upon which the parties previously agreed.  Specifically, the parameters are as follows:

Deposition Topic Nos. 1, 5, 17, 19, 20, 21, 26

In these deposition topics, [Plaintiff is] seeking information regarding hiring and retention of the specific train crew involved in the January 18, 2013[,] incident[,] as well as the hiring and retention of engineers and conductors, more generally.  [Plaintiff has] agreed to limit any questioning relative to hiring and retention of engineers and conductors generally to a ten (10) year time frame preceding the date of the incident.

Furthermore, [Plaintiff has] agreed to limit the scope of the general topics of "hiring and retention" to subject matters surrounding

the following lines of inquiry: hiring processes; qualifications necessary to attain and maintain these positions; training processes; training(s) received; and when, why and how discipline is administered. In reference to No. 21 specifically, where documents have been produced in discovery regarding [Defendant's] employee policies and procedures, questions will be restricted as to how those documents do/do not apply to the training of the specific train crew involved in the January 18, 2013[,] incident.

Deposition Topic Nos. 2, 3, 10, 11, 12

In these deposition topics, [Plaintiff is] seeking information regarding the training and supervision of the specific train crew involved in the January 18, 2013[,] incident[,] as well as the training and supervision of engineers and conductors, more generally. [Plaintiff has] agreed to limit any questioning relative to the training and supervision of engineers and conductors generally to a ten (10) year time frame preceding the date of the incident.

Furthermore, [Plaintiff has] agreed to limit the scope of the general topics of "training and supervision" to subject matters surrounding the safety and operation of trains as they approach public crossings. This includes [Defendant's] rules and/or policies imposed upon engineers and conductors when approaching public crossings that were in effect at the time of the January 18, 2013[,] incident.

Deposition Topic Nos. 4, 18, 22, 23

In these deposition topics, [Plaintiff is] seeking information regarding event recorder data and LocoCAM data produced in the current litigation relative to the January 18, 2013[,] incident.

Regarding the event recorder data and LocoCAM data produced in the current litigation relative to the January 18, 2013[,] incident, [Plaintiff has] agreed to limit the scope of questioning to issues surrounding chain-of-custody procedures, including how the data is removed from a device and stored.

Regarding the event recorder data and LocoCAM data used and maintained on [Defendant's] locomotives generally, [Plaintiff has] agreed to limit the scope of questioning to [Defendant's] non-litigation uses of this data. [Plaintiff's] line of inquiry will surround how [Defendant] uses the event recorder data and LocoCAM data for purposes outside of litigation, if any. Specifically, [Plaintiff] would like to inquire as to whether event recorder data and LocoCAM data is used for any supervision and/or monitoring purposes.

<u>Deposition Topic Nos. 6, 24, 25, 30, 31</u>

In these deposition topics, [Plaintiff is] seeking information regarding [Defendant's] policies and procedures employed in general when an accident and/or collision occurs at a public crossing[,] as well as the policies and procedures employed by [Defendant] relative to its investigation of the January 18, 2013[,] incident specifically. [Plaintiff has] agreed to limit any question relative to [Defendant's] general post-accident policies and procedures to a ten (10) year time frame preceding the date of the incident.

Furthermore, [Plaintiff has] agreed to limit the scope of the general topics of "post-accident policies and procedures" to subject matters surrounding the following lines of inquiry: the processes employed when an accident occurs; what protocols [Defendant] follows when an accident occurs; the information gathered by [Defendant] when an accident occurs; whether [Defendant] determines a "cause" of an accident; whether [Defendant] employs any safety evaluation post-accident; and whether [Defendant] employs any corrective measures post-accident.

As part of this topic, [Plaintiff is] seeking information regarding the filings and/or reports generally generated by [Defendant] when an accident and/or collision occurs at a public crossing[,] as well as the filing and/or reports generated by [Defendant] relative to the January 18, 2013[,] incident specifically. Again, [Plaintiff has] agreed to limit any questioning relative to [Defendant's] general preparation of post-accident filings and/or reports to a ten (10) year time frame preceding the date of the incident.

With regard to what procedures were employed by [Defendant] following the January 18, 2013[,] incident, questioning will surround[] the content of the specific documents that have been produced through written discovery which evidence [Defendant's] investigation and reporting of the January 18, 2013[,] incident.

<u>Deposition Topic Nos. 7, 8, 27, 33, 34</u>

In these deposition topics, [Plaintiff is] seeking information regarding records/data kept for the specific locomotives involved in the January 18, 2013[,] incident. These topics are limited to the locomotives involved in the January 18, 2013[, incident] and are limited to a timeframe of July 1, 2012[,] to February 28, 2013.

Furthermore, [Plaintiff has] agreed to limit the scope of the general topics of locomotive "records" and "data" to subject matters

surrounding the following lines of inquiry: processes for locomotive inspection; how the locomotives were maintained; processes and procedures authorizing daily locomotive movements; authentication of the maintenance, repair and inspection records that have been produced in written discovery; and authentication of timetables that have been produced in written discovery.

In reference to No. 8 specifically, [Plaintiff is] seeking information regarding the equipment and systems that were in place on the specific locomotives involved in the January 18, 2013[, incident], including radios, bells, horns, lights, brakes, event records, etc. [Plaintiff has] agreed to limit the scope of this inquiry to the equipment and systems in place at the time of the January 18, 2013[,] incident and for the preceding two (2) years.

In reference to No. 34 specifically, [Plaintiff is] seeking information regarding the processes and procedures employed by engineers and/or conductors prior to the locomotives' use on the rail line specific to the January 18, 2013[,] incident, including the records generated therefrom.

*　　*　　*

Deposition Topic Nos. 13, 14, 15

In these deposition topics, [Plaintiff is] seeking information regarding the warning devices in place at the crossing at[] issue relative to the January 18, 2013[, incident] (the "Ferndale Avenue Crossing"). These topics (with the exception of No. 14 as outlined below) are limited to the Ferndale Avenue Crossing and are limited to a timeframe of January 1, 2012[,] through February 28, 2013.

Furthermore, [Plaintiff has] agreed to limit the scope of [his] questioning regarding the Ferndale Avenue Crossing to subject matters surrounding the maintenance and inspection records generated from the Ferndale Avenue Crossing, including how those records are created and maintained by [Defendant]. Moreover, "maintenance and inspection records" are limited to those records regarding the Ferndale Avenue Crossing warning systems.

In reference to No. 14 specifically, [Plaintiff has] agreed to limit the scope of [his] inquiry to factual information regarding the history of the Ferndale Avenue Crossing, including when the warning devices were put in place, how the installation of those warning devices [was] funded, and how the installation of these warning devices was achieved. Because of the historical nature of topic No. 14, questioning relative to the installation and funding of warning devices at the Ferndale Avenue Crossing will not be limited to any timeframes set forth above. [Plaintiff

has] further agreed that this topic will not include any questions concerning legal interpretations of the terms of any contracts or documents.

Deposition Topic No. 16

[Plaintiff has] agreed to limit the scope of topic No. 16 to the dispatch recordings relative to the January 18, 2013[,] incident that were produced in written discovery. Moreover, [Plaintiff has] agreed to limit the scope of [his] questioning regarding these dispatch recordings to the following lines of inquiry: how does the recording system operate; where do the recordings originate from; who are the voices that appear on the recordings; and how are the recordings stored. This topic is limited to the January 18, 2013[,] incident.

Deposition Topic No. 28

In this deposition topic No. 28, {Plaintiff is] seeking background information regarding the LocoCAM system on the locomotive involved in the January 18, 2013[,] incident. With regard to the LocoCAM system, [Plaintiff has] agreed to limit the scope of [his] questioning to the following lines of inquiry: how [Defendant] set up the system; what settings [Defendant] used within the system; what capabilities the system had; and what documents [Defendant] had regarding the system. For this topic, the "LocoCAM system" referenced deals with the specific system that was in place on the specific locomotive involved in [the] January 18, 2013[, incident]. However, questioning regarding this system more generally is limited to a timeframe of ten (10) years preceding the January 18, 2013[,] incident.

Deposition Topic No. 29

In this deposition topic No. 29, [Plaintiff is] seeking background information regarding the Secure NOW system. With regard to the Secure NOW system, [Plaintiff has] agreed to limit the scope of questioning to the following lines of inquiry: how the system operates; how data is collected within the system; and how the data from the system is used by [Defendant] for non-litigation purposes. Questioning regarding this system is limited to a timeframe of ten (10) years preceding the January 18, 2013[,] incident.

(ECF No. 26-6.)

Next, the Court will address the parties' arguments regarding deposition topic numbers nine and thirty-two. In deposition topic number thirty-two, Plaintiff seeks "[t]he Life Changing Index (LCI) data, documents and determinations regarding the collision in question and injuries involved." (ECF No. 26-2 ¶ 32.) Defendant argues that its motion for a protective order to preclude testimony relative to this topic should be granted because "'[t]he Life Changing Index is only applicable to [Defendant] employee injuries and is not applicable and/or relevant to injuries sustained by non-employees, including Plaintiff herein.'" (ECF No. 29 ¶ 74 (quoting ECF No. 29-1 ¶ 32).) Defendant further states that "[t]he LCI is a predictive model used internally by [Defendant] as a means to assess the risk of employee injuries. As part of this data generated, [Defendant] considers employee incidences in conjunction with other predetermined criteria, including employee hours of service." (Id. ¶ 76.) Defendant argues that "the LCI data has never been applied to a non-employee inquiry" and that "[b]ecause the LCI data is not applied outside the employee context, there is no information 'regarding the collision in question and injuries involved.'" (Id. ¶ 77 (quoting ECF No. 26-2 ¶ 32).)

As noted above, Plaintiff does not specifically mention deposition topic number thirty-two in his motion to compel Defendant's Rule 30(b)(6) deposition. However, Defendant has failed to demonstrate good cause. Specifically, Defendant has failed to establish that Plaintiff seeks this information for an improper purpose and that disclosure of this information will cause Defendant embarrassment. Defendant has also failed to provide any authority supporting its position that deposition topics regarding LCI data must be precluded, and the Court has not located any authority supporting Defendant's

position.  Because Defendant states that "[it] has represented to Plaintiff that it will produce a corporate representative . . . to provide testimony that the LCI is inapplicable to Plaintiff's injuries," (ECF No. 29 ¶ 78), the Court will deny Defendant's motion for a protective order.  Instead, to promote fairness and efficiency, deposition topic number thirty-two will proceed upon the terms to which the parties previously agreed:

> Deposition Topic No. 32
>
> Topic No. 32 seeks information regarding the Life Changing Index (LCI) data.  As previously explained, this data is used by [Defendant] only in the context of employee injuries.  Therefore, [Plaintiff] has agreed to limit this topic to testimony from [Defendant] confirming that LCI data is used for [Defendant's] employees only.  As part of this inquiry, [Plaintiff is] seeking testimony regarding:  what is the LCI data; when is the LCI data collected; and when is the LCI data applied.

(ECF No. 26-6.)

Finally, in deposition topic number thirty-two, Plaintiff seeks testimony detailing "[t]he positions, beliefs and opinions of [Defendant] regarding the claims in this action, including the affirmative defenses asserted."  (ECF No. 26-2 ¶ 9.)  Plaintiff argues that Defendant "has asserted twenty-one (21) separate affirmative defenses," and he "should not be limited or precluded from inquiry about any defense raised in [Defendant's] Answer."  (ECF No. 28 at 3.)  In support of his argument, Plaintiff cites to case law stating that corporate designees must not only testify about facts, but also about their "subjective beliefs and opinions."  (*Id.*)

In response, Defendant moves for a protective order and argues that the preparation of a witness to discuss the topic "could be accomplished only [by] having [Defendant's] counsel educate the witness on how the facts relate to the *legal* topic at[]

issue." (ECF No. 29 ¶ 60 (emphasis in original).) Defendant also asserts that "[n]ot only would testimony delve into areas covered by the attorney-client privilege, questioning into this area would inherently reveal counsel's mental impressions." (*Id.*) Defendant states that the testimony Plaintiff seeks "includes legal conclusions, legal opinions and legal analyses," which "represents an impermissible discovery request." (*Id.* ¶ 61.) Defendant requests that, "[i]nsofar as discovery pertaining to [Defendant's] positions regarding Plaintiff's claims is proper at all," the Court order Plaintiff to make his inquiry through contention interrogatories. (*Id.* ¶ 65.) Defendant notes that "Plaintiff has already served upon [Defendant] the maximum interrogatories allowable by the [Federal] Rules" and that "[its] consent to allow Plaintiff to serve *additional* interrogatories, albeit ten (10), represents an accommodation to [Plaintiff]." (*Id.* ¶ 72 (emphasis in original).)

As discussed above, the Federal Rules provide that a party may only obtain discovery regarding matters that are not privileged and that are not an attorney's work product. *See* Fed. R. Civ. P. 26(b)(3); *Hickman*, 329 U.S. at 512. However, courts have split on the issue of whether to allow parties to use Rule 30(b)(6) depositions to explore facts underlying legal claims and theories. *Compare Neponset Landing Corp. v. Northwestern Mut. Life Ins. Co.*, No. 10-CV-11963, 2011 U.S. Dist. LEXIS 146290, at *4-5 (D. Mass. Dec. 20, 2011) (finding the plaintiff's deposition topic seeking "[t]he basis of [the defendant's] affirmative defenses" impermissible because "[w]hile asking a 30(b)(6) witness about facts is entirely appropriate, the lay witness should not be expected to testify as to how any such facts form the basis of a legal affirmative defense"), *and JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, No. 01-CV-11523, 2002 U.S. Dist. LEXIS 17415, at *3 (S.D.N.Y. Sept.

16, 2002) ("[D]epositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means."), *with Milwaukee Elec. Tool Corp. v. Chervon N. Am., Inc.*, No. 14-CV-1289, 2015 U.S. Dist. LEXIS 92546, at *12-13 (E.D. Wis. July 16, 2015) (denying motion for protective order because "[t]he defendant does not seek the mental impression of the plaintiffs' counsel or experts, but rather it is merely seeking information in the plaintiffs' possession on which they base their assertions that the defendant has infringed its patents"), *and EEOC v. Caesars Entm't, Inc.*, No. 2:05-CV-0427, 2006 U.S. Dist. LEXIS 68032, at *15-16, 23-25 (D. Nev. Aug. 16, 2006) (denying the defendant's motion for a protective order "to limit the scope of Rule 30(b)(6) deposition questioning to preclude inquiry into the factual bases for defendant's asserted position statements and affirmative defenses").

Courts within the Third Circuit follow the approach that parties may use Rule 30(b)(6) depositions to explore facts underlying legal claims and theories. *See, e.g., State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, No. 03-6516, 2008 U.S. Dist. LEXIS 37571, at *32 (E.D. Pa. May 8, 2008) (granting motion to compel a Rule 30(b)(6) deposition and ordering that "[t]o the extent that defense counsel's questions seek relevant, non-privileged facts learned from discussions with counsel, and do not seek counsel for [the plaintiff's] 'mental impressions, conclusions, opinions, or legal theories,' those questions must be answered"); *AMP, Inc. v. Fujitsu Microelectronics, Inc.*, 853 F. Supp. 808, 831 (M.D. Pa. 1994) (granting motion to compel a Rule 30(b)(6) deposition covering "topics [that]

deal largely with the contentions and affirmative defenses detailed in [the d]efendants' answer and counterclaim").[2]

Similarly, this District permits parties to seek factual information regarding underlying legal claims and theories. *See, e.g., United States v. Educ. Mgmt. LLC*, No. 2:07-CV-461, 2014 U.S. Dist. LEXIS 48841, at *15-16, 19 (W.D. Pa. Apr. 9, 2014) (finding assertions of attorney-client and work-product protection to be premature because "the attorney-client privilege and work product doctrines cannot be wielded as a preemptive shield to quash the depositions in advance" and ordering that the Rule 30(b)(6) deposition "proceed, with the United States asserting privilege and work product objections, if appropriate, during the deposition"); *Grane Healthcare Co.*, 2013 U.S. Dist. LEXIS 35869, at *11 (granting motion to compel Rule 30(b)(6) deposition because "the EEOC, like all other litigants, must testify to underlying facts and may object to any privileged information at the time the question is presented"); *EEOC v. LifeCare Mgmt. Servs., LLC*, No. 2:08-CV-1358, 2009 U.S. Dist. LEXIS 21224, at *5 (W.D. Pa. Mar. 17, 2009)

---

[2] The parties may benefit from the guidance offered by the court in *State Farm Mutual Automobile Insurance Co.*:

> First, . . . [the defendant's corporate representative] has an obligation to be prepared as a Rule 30(b)(6) spokesperson. Second, [the corporate representative], to the extent that [he or] she is able, must recite the facts upon which [the defendant] relied to support the allegations of its answer and counterclaim which are not purely legal, even though those facts may have been provided to [his] or her employer by [the defendant's] lawyers. Third, [the plaintiff] is directed, when formulating questions to [the defendant's corporate representative], to avoid asking questions of [the corporate representative] which are intended to elicit [the defendant's] counsel's advice, [the defendant's] counsel's view as to the significance or lack thereof of particular facts, or any other matter that reveals [the defendant's] counsel's mental impressions concerning this case.

2008 U.S. Dist. LEXIS 37571, at * 33-34 n.9 (internal quotations omitted).

(denying motion to quash a Rule 30(b)(6) deposition and motion for a protective order because "the Court finds and rules that the EEOC cannot seek protection from Defendants' 30(b)(6) Notice of Deposition by unilaterally declaring all information known to the EEOC as privileged").

The Court will follow the precedent of the aforementioned decisions and further finds that Defendant has failed to establish good cause for its motion for a protective order with respect to deposition topic number nine. Specifically, Defendant has failed to demonstrate that its privacy interests will be violated because, as discussed above, Plaintiff will explore the *facts* underlying Defendant's positions, beliefs and opinions regarding the claims in this action. Plaintiff therefore seeks this information for a legitimate purpose. Additionally, Defendant has failed to establish that disclosure of this information will cause it embarrassment. Accordingly, to promote fairness and efficiency, the Court will deny Defendant's motion for a protective order to preclude the deposition of its representative with respect to deposition topic number nine.

## VI.    Conclusion

For the reasons set forth above, Defendant's motion to compel Plaintiff's medical records is granted in part and denied in part, Plaintiff's motion to compel a Federal Rule of Civil Procedure 30(b)(6) deposition of Defendant is granted in part and denied in part, and Defendant's cross-motion for protective order is granted in part and denied in part.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN LOPEZ, | ) | CIVIL ACTION NO. 3:14-257 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

**AND NOW**, this 13th day of October, 2015, for the reasons set forth in the foregoing memorandum opinion, **IT IS HEREBY ORDERED** as follows:

1. Defendant's motion (ECF No. 23) to compel disclosure of Plaintiff's medical records is **GRANTED in part** and **DENIED in part**.

   a. Plaintiff shall provide his complete medical history regarding his mental and emotional health to Defendant.

   b. Plaintiff shall provide Defendant with the medical records regarding his general physical health from January 18, 2008, through the present.

   c. Plaintiff shall provide his medical records to Defendant by the discovery deadline of October 30, 2015 (ECF No. 27), subject to the following limitations:

      i. Plaintiff's medical records shall be used solely for purposes of this litigation;

      ii. the information contained in Plaintiff's medical records shall not be disseminated or disclosed to any individual or source not related to this case; and

      iii. Defendant shall return all copies of Plaintiff's medical records to him at the conclusion of this litigation.

2. Plaintiff's motion (ECF No. 26) to compel a Federal Rule of Civil Procedure 30(b)(6) deposition is **GRANTED in part** and **DENIED in part**. Plaintiff's motion is granted to the extent that the Federal Rule of Civil Procedure 30(b)(6) deposition shall be held by the discovery deadline of October 30, 2015 (ECF No. 27). Plaintiff's motion is denied in all other respects.

3. Defendant's cross-motion (ECF No. 29) for a protective order concerning the Federal Rule of Civil Procedure 30(b)(6) deposition is **GRANTED in part** and **DENIED in part**.

   a. Deposition topic numbers one through eight, ten through thirty-one, and thirty-three through thirty-four shall proceed according to the following limitations upon which the parties previously agreed:

   Deposition Topic Nos. 1, 5, 17, 19, 20, 21, 26

   In these deposition topics, Plaintiff is seeking information regarding hiring and retention of the specific train crew involved in the January 18, 2013, incident, as well as the hiring and retention of engineers and conductors, more generally. Plaintiff has agreed to limit any questioning relative to hiring and retention of engineers and conductors generally to a ten (10) year time frame preceding the date of the incident.

   Furthermore, Plaintiff has agreed to limit the scope of the general topics of "hiring and retention" to subject matters surrounding the following lines of inquiry: hiring processes; qualifications necessary to attain and maintain these positions; training processes; training(s) received; and when, why and how discipline is administered. In reference to No. 21 specifically, where documents have been produced in discovery regarding Defendant's employee policies and procedures, questions will be restricted as to how those documents do/do not apply to the training of the specific train crew involved in the January 18, 2013, incident.

## Deposition Topic Nos. 2, 3, 10, 11, 12

In these deposition topics, Plaintiff is seeking information regarding the training and supervision of the specific train crew involved in the January 18, 2013, incident, as well as the training and supervision of engineers and conductors, more generally. Plaintiff has agreed to limit any questioning relative to the training and supervision of engineers and conductors generally to a ten (10) year time frame preceding the date of the incident.

Furthermore, Plaintiff has agreed to limit the scope of the general topics of "training and supervision" to subject matters surrounding the safety and operation of trains as they approach public crossings. This includes Defendant's rules and/or policies imposed upon engineers and conductors when approaching public crossings that were in effect at the time of the January 18, 2013, incident.

## Deposition Topic Nos. 4, 18, 22, 23

In these deposition topics, Plaintiff is seeking information regarding event recorder data and LocoCAM data produced in the current litigation relative to the January 18, 2013, incident.

Regarding the event recorder data and LocoCAM data produced in the current litigation relative to the January 18, 2013, incident, Plaintiff has agreed to limit the scope of questioning to issues surrounding chain-of-custody procedures, including how the data is removed from a device and stored.

Regarding the event recorder data and LocoCAM data used and maintained on Defendant's locomotives generally, Plaintiff has agreed to limit the scope of questioning to Defendant's non-litigation uses of this data. Plaintiff's line of inquiry will surround how Defendant uses the event recorder data and LocoCAM data for purposes outside of litigation, if any. Specifically, Plaintiff would like to inquire as to whether event recorder data and LocoCAM data is used for any supervision and/or monitoring purposes.

In these deposition topics, Plaintiff is seeking information regarding Defendant's policies and procedures employed in general when an accident and/or collision occurs at a public crossing, as well as the policies and procedures employed by Defendant relative to its investigation of the January 18, 2013, incident specifically. Plaintiff has agreed to limit any question relative to Defendant's general post-accident policies and procedures to a ten (10) year time frame preceding the date of the incident.

Furthermore, Plaintiff has agreed to limit the scope of the general topics of "post-accident policies and procedures" to subject matters surrounding the following lines of inquiry: the processes employed when an accident occurs; what protocols Defendant follows when an accident occurs; the information gathered by Defendant when an accident occurs; whether Defendant determines a "cause" of an accident; whether Defendant employs any safety evaluation post-accident; and whether Defendant employs any corrective measures post-accident.

As part of this topic, Plaintiff is seeking information regarding the filings and/or reports generally generated by Defendant when an accident and/or collision occurs at a public crossing, as well as the filing and/or reports generated by Defendant relative to the January 18, 2013, incident specifically. Again, Plaintiff has agreed to limit any questioning relative to Defendant's general preparation of post-accident filings and/or reports to a ten (10) year time frame preceding the date of the incident.

With regard to what procedures were employed by Defendant following the January 18, 2013, incident, questioning will surround the content of the specific documents that have been produced through written discovery which evidence Defendant's investigation and reporting of the January 18, 2013, incident.

Deposition Topic Nos. 7, 8, 27, 33, 34

In these deposition topics, Plaintiff is seeking information regarding records/data kept for the specific locomotives involved in the January 18, 2013, incident.

These topics are limited to the locomotives involved in the January 18, 2013, incident and are limited to a timeframe of July 1, 2012, to February 28, 2013.

Furthermore, Plaintiff has agreed to limit the scope of the general topics of locomotive "records" and "data" to subject matters surrounding the following lines of inquiry: processes for locomotive inspection; how the locomotives were maintained; processes and procedures authorizing daily locomotive movements; authentication of the maintenance, repair and inspection records that have been produced in written discovery; and authentication of timetables that have been produced in written discovery.

In reference to No. 8 specifically, Plaintiff is seeking information regarding the equipment and systems that were in place on the specific locomotives involved in the January 18, 2013, incident, including radios, bells, horns, lights, brakes, event records, etc. Plaintiff has agreed to limit the scope of this inquiry to the equipment and systems in place at the time of the January 18, 2013, incident and for the preceding two (2) years.

In reference to No. 34 specifically, Plaintiff is seeking information regarding the processes and procedures employed by engineers and/or conductors prior to the locomotives' use on the rail line specific to the January 18, 2013, incident, including the records generated therefrom.

## Deposition Topic Nos. 13, 14, 15

In these deposition topics, Plaintiff is seeking information regarding the warning devices in place at the crossing at[] issue relative to the January 18, 2013, incident (the "Ferndale Avenue Crossing"). These topics (with the exception of No. 14 as outlined below) are limited to the Ferndale Avenue Crossing and are limited to a timeframe of January 1, 2012, through February 28, 2013.

Furthermore, Plaintiff has agreed to limit the scope of his questioning regarding the Ferndale Avenue Crossing to subject matters surrounding the maintenance and inspection records generated from the Ferndale Avenue Crossing, including how those records are created and maintained by Defendant. Moreover, "maintenance

and inspection records" are limited to those records regarding the Ferndale Avenue Crossing warning systems.

In reference to No. 14 specifically, Plaintiff has agreed to limit the scope of his inquiry to factual information regarding the history of the Ferndale Avenue Crossing, including when the warning devices were put in place, how the installation of those warning devices was funded, and how the installation of these warning devices was achieved. Because of the historical nature of topic No. 14, questioning relative to the installation and funding of warning devices at the Ferndale Avenue Crossing will not be limited to any timeframes set forth above. Plaintiff has further agreed that this topic will not include any questions concerning legal interpretations of the terms of any contracts or documents.

## Deposition Topic No. 16

Plaintiff has agreed to limit the scope of topic No. 16 to the dispatch recordings relative to the January 18, 2013, incident that were produced in written discovery. Moreover, Plaintiff has agreed to limit the scope of his questioning regarding these dispatch recordings to the following lines of inquiry: how does the recording system operate; where do the recordings originate from; who are the voices that appear on the recordings; and how are the recordings stored. This topic is limited to the January 18, 2013, incident.

## Deposition Topic No. 28

In this deposition topic No. 28, Plaintiff is seeking background information regarding the LocoCAM system on the locomotive involved in the January 18, 2013, incident. With regard to the LocoCAM system, Plaintiff has agreed to limit the scope of his questioning to the following lines of inquiry: how Defendant set up the system; what settings Defendant used within the system; what capabilities the system had; and what documents Defendant had regarding the system. For this topic, the "LocoCAM system" referenced deals with the specific system that was in place on the specific locomotive involved in the January 18, 2013, incident. However,

questioning regarding this system more generally is limited to a timeframe of ten (10) years preceding the January 18, 2013, incident.

Deposition Topic No. 29

In this deposition topic No. 29, Plaintiff is seeking background information regarding the Secure NOW system. With regard to the Secure NOW system, Plaintiff has agreed to limit the scope of questioning to the following lines of inquiry: how the system operates; how data is collected within the system; and how the data from the system is used by Defendant for non-litigation purposes. Questioning regarding this system is limited to a timeframe of ten (10) years preceding the January 18, 2013, incident.

b. Deposition topic number nine shall proceed as detailed in Plaintiff's Federal Rule of Civil Procedure 30(b)(6) notice and will include: the positions, beliefs, and opinions of Defendant regarding the claims in this action, including the affirmative defenses asserted. Questioning with respect to this topic shall not elicit Defendant's counsel's advice or any other matter that reveals Defendant's counsel's mental impressions concerning this case.

c. Deposition topic number thirty-two shall proceed according to the following limitations upon which the parties previously agreed:

Deposition Topic No. 32

Topic No. 32 seeks information regarding the Life Changing Index (LCI) data. As previously explained, this data is used by Defendant only in the context of employee injuries. Therefore, Plaintiff has agreed to limit this topic to testimony from Defendant confirming that LCI data is used for Defendant's employees only. As part of this inquiry, Plaintiff is seeking testimony regarding: what is the LCI data; when is the LCI data collected; and when is the LCI data applied.

**BY THE COURT:**

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE