IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


JOANATHAN LOPEZ,

      **Plaintiff**

v.                                         Civil Action No. 3:14-cv-00257

CSX TRANSPORTATION, INC.,

      **Defendant.**

## CSX TRANSPORTATION, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF THE DENIAL OF SUMMARY JUDGMENT AS TO PUNITIVE DAMAGES BASED ON NEWLY-DECIDED AUTHORITIES

Defendant CSX Transportation, Inc. ("CSXT"), through undersigned counsel, submits the following Memorandum in Support of its Motion for Reconsideration of the Denial of Summary Judgment as to Punitive Damages Based on Newly-Decided Authorities.[1]

**I.     Introduction.**

CSXT filed its Motion for Summary Judgment and Memorandum in Support (Docs. 44-45) on December 15, 2016, and its Reply Brief in Support (Doc. 58) on January 26, 2017. Since that time, two intervening decisions have clarified and amplified the applicable law on the state of mind required to support an award of punitive damages. The first is the decision from the Middle District of Pennsylvania in *Marsh v. Norfolk S., Inc.*, 243 F. Supp. 3d 557 (M.D. Pa.

---

[1] This Motion concerns only the Court's ruling as to punitive damages. Although CSXT respectfully disagrees with the Court's ruling as to train handling, CSXT is not moving to reconsider that ruling.

2017)[2], and the second is the Third Circuit's decision in *In re: Paulsboro Derailment Cases*, Nos. 15-4039, 16-1654, 16-1655, ---Fed. App'x---, 2017 WL 3700902 (3d Cir. Aug. 28, 2017) (hereinafter "*Paulsboro*"). Each of these decisions specifically addressed the showing required to prove conscious or reckless disregard, which was central to this Court's summary judgment ruling. (*See* Doc. 63 at 28-30.) CSXT recognizes that reconsideration is the exception rather than the rule, but these clarifications evidence that punitive damages are not available in this case, and support the granting of this Motion.

## II. Argument.

### a. Standard of Review

CSXT is cognizant that motions for reconsideration are rarely to be used and "may only be granted if the moving party demonstrates at least one of the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Gadley v. Ellis*, No. CIV.A. 3:13-17, 2015 WL 2345619, at *2 (W.D. Pa. May 15, 2015). As for summary judgment, it should be granted when the moving party either "(1) offer[s] affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrate[s] to the [c]ourt that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case." *Rover Pipeline LLC v. Old Wilson Farm Land Tr.*, No. 17CV0170, 2017 WL 916344, at *3 (W.D. Pa. Mar. 8, 2017). The intervening *Marsh* and *Paulsboro* decisions clarify that summary

---

[2] In its summary judgment order, the Court *sua sponte* noted *Marsh* for the propositions that (1) the duty to stop or slow only arises "when someone is in a 'position of peril'" (quoting *Moss v. Reading Co.*, 418 Pa. 598 (1965)), and (2) the mere violation of an internal rule does not defeat preemption. (*See* Doc. 63 at 9, 26-27.) The Court did not address *Marsh*'s discussion and holdings related to reckless disregard in the context of train handling generally and punitive damages specifically, nor did CSXT have the opportunity to address them in its briefing.

2

judgment is appropriate on both grounds where, as here, it is undisputed the defendant took steps to avoid injury, but was unsuccessful.

### b. Recent Intervening Clarifications Warrant Reconsideration on Punitive Damages.

The intervening clarifications provided by the *Marsh* and *Paulsboro* decisions address the state of mind required for punitive damages and the showing required to sustain such a claim. Before *Marsh* no Pennsylvania court had so clearly held that reckless or conscious disregard does not exist when an engineer takes steps to avoid a collision with a pedestrian, a finding supported by the reasoning in *Paulsboro*. These clarifications establish that punitive damages are not available here and summary judgment should be granted.

As the Court noted, "[w]hen assessing the propriety of the imposition of punitive damages, the state of mind of the actor is vital." (Doc. No. 63 at 28 (quoting *Hutchison ex rel. Hutchison,* 582 Pa. 114, 122 (2005)).) In quoting the Pennsylvania Supreme Court, the Court held that "[a] punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." (*Id*. (quoting *Hutchison*, 582 Pa. at 124; citing *Scott v. Burke,* No. 2:13-CV-278, 2013 WL 4648402, at *3 (W.D. Pa. 2013).) Although the Court noted that "an actor's state of mind is generally not resolved on summary judgment[,]" the intervening decisions and clarifications in the law indicate that resolution of that question is appropriate here. (*Id.* (quoting *Guerra v. New Prime, Inc.*, No. 2:11-CV-00020, 2012 WL 2979064, at *3 (W.D. Pa. 2012).)

Unlike any case before, *Marsh v. Norfolk Southern* clarifies that a train crew does not have the requisite state of mind when the crew takes affirmative steps to avoid injury. 243

F.Supp.3d at 557.[3] Like here, *Marsh* involved a train striking a person walking near the track. In *Marsh*, the engineer testified that he saw "something" that looked like a "black blob" by the tracks, but did not realize until later it was a person. *Id.* at 559. Upon realizing it was a person walking along the tracks, the crew sounded the horn, believing that the person would vacate the tracks. *Id.* at 560. The court held that the engineer "did not manifest a reckless disregard of the existing or potential danger because it was reasonable for him to believe that [the plaintiff] would vacate the tracks after receiving sufficient warning from the approaching train." *Id.* at 565; *see also id.* at 573 (applying that reasoning to punitive damages).

The holding in *Marsh* is all the more applicable here. In *Marsh*, the plaintiff was already near or on the tracks at the time the crew took action, whereas here the Plaintiff was farther away when the warnings began. As this Court noted in its Summary Judgment order, the parties "agree that several warnings existed to warn people that the train was about to enter the Crossing" and "these warnings successfully alerted nearby motorists." (Doc. 63 at 2-3.) It is undisputed that the crew started to sound the horn well before Plaintiff was even near the tracks, the crew started ringing the train's bell and continued to ring the bell as they approached the crossing, and that the crew engaged the emergency brake before Plaintiff stepped onto the tracks. (*Id.* at 2-4.) In other words, here the crew provided substantially more warning than was provided in *Marsh*. Thus, if the crew's actions in *Marsh* could not support a finding of conscious or reckless disregard under Pennsylvania law, it follows that the crew's actions here could not either. Moreover, the fact that Plaintiff was walking towards a public crossing only

---

[3] Because the plaintiff in *Marsh* was a trespasser, the court first had to evaluate the defendant's state of mind in determining whether the crew evidenced willful or wanton conduct such that liability could exist. 2017 WL 1049084 at *6-*8. The Court then incorporated that same analysis as to punitive damages, noting that the "analysis of wanton conduct goes hand-in-hand with a discussion regarding punitive damages." *Id.* at *14.

amplifies the holding of *Marsh* that it would be reasonable to believe that a pedestrian would vacate or not enter the tracks if sufficient warning is given.

*Marsh* also held that reckless or conscious disregard should not be determined in the granularity of seconds, like Plaintiff seeks here. As the *Marsh* court held:

> Following [p]laintiff's logic, at some point during the mere sixteen seconds, [the engineer's] conduct changed from reasonable, to negligent, to, apparently, wanton. Plaintiff would like to imbue the concept of wantonness with the sort of rigidity that is capable of manufacturing arbitrary segmentation of time in that liability somehow attached upon the passing of the second, or fourth, or seventh second following the identification of the "blob" on the tracks as a person. However, it is precisely the granularity of the data and the minute distinctions in time and conduct, where [p]laintiff seeks to capture wantonness, that I find wantonness to be elusive.

243 F.Supp.3d at 566–67.  The Court has already held that Plaintiff was not in a position of peril 20 seconds before the collision, and even Plaintiff's expert agrees that the crew engaged the emergency brake at least three seconds before the collision.  (Doc. 63 at 8-12.)  This means that Plaintiff's theory is that somewhere in the seventeen seconds between those two points, the crew's state of mind went from "reasonable, to negligent to, . . . wanton".  *Marsh*, 243 F.Supp.3d at 566-67.  To the extent this is even plausible, the *Marsh* court clarified that this "granularity" of a claim does not evidence reckless or conscious disregard.

*Marsh* also clarified that the failure to react sooner alone does not constitute conscious or reckless disregard.  *Id*. at 566.  Therefore, the fact that the crew did not recognize Plaintiff's intention to continue across the tracks earlier, despite the warnings given, does not support punitive liability.  In short, *Marsh* clarifies both that (1) Plaintiff lacks sufficient evidence to establish an essential element—conscious or reckless disregard—and that (2) the evidence affirmatively negates that element.  *See Rover Pipeline LLC*, 2017 WL 916334 at *3.

The Third Circuit's recent decision in *Paulsboro* also addressed what allegations are required to establish an actor's state of mind. 2017 WL 3700902 at *8. Although *Paulsboro* applied New Jersey law, Pennsylvania and New Jersey law on punitive damages are substantively similar. Both states adhere to the same standard, which requires proof of reckless indifference to the harm. *Compare id.* at *8 ("Conduct must occur with malice or 'with knowledge of a high degree of probability of harm and reckless indifference to the consequences.'" (quoting *Smith v. Whitaker*, 734 A.2d 243, 254 (N.J. 1999)) *with Hutchison*, 582 Pa. at 124 (requiring proof that "(1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act. . . in conscious disregard of that risk").

*Paulsboro* involved a derailment after a train approached a bridge that had a red signal showing, which indicated the train should not cross. *Id*. at *1-*2. Numerous reports of signal problems had been made regarding the bridge in the years preceding the derailment. *Id*. On the night of the derailment, the crew walked the rail before the train crossed the bridge, concluded it was appropriately locked, and proceeded across once the dispatcher granted permission. *Id.* Nevertheless, seven cars derailed. *Id.*

Similar to *Marsh*, the Third Circuit held that "[p]unitive damages are unavailable in a situation like this, where a defendant knows of a potentially hazardous situation and unsuccessfully takes steps to remedy the situation." *Id.* at *8. Here, Plaintiff and others near the tracks had numerous warnings including automatic warning lights and the crew activating the lights on the train, ringing the train's bell, sounding the train's horn numerous times, and then applying the emergency brake prior to Plaintiff stepping on the track. (Doc. 63 at 2-4.) Even assuming the crew was subjectively aware of the risk, the crew took many steps to prevent the

accident. Although unsuccessful, like in *Paulsboro*, these steps show that as a matter of law the crew did not evince conscious or reckless disregard.

In sum, these developments warrant reconsideration and the granting of summary judgment in CSXT's favor on punitive damages. As clarified by these decisions, under Pennsylvania law Plaintiff not only lacks sufficient evidence of reckless or conscious disregard, but also the undisputed facts found by the Court affirmatively negate that reckless or conscious disregard existed.

WHEREFORE, Defendant CSX Transportation, Inc. respectfully requests that this Court grant its Motion for Reconsideration and enter judgment on Plaintiff's punitive damages claim in CSXT's favor, and grant all other relief it deems just.

Date: September 25, 2017

                                                  Respectfully submitted,

                                                  SMITH BUTZ, LLC

                                                  By:  /s/ Kendra L. Smith
                                                          Kendra L. Smith
                                                          *Counsel for Defendant,*
                                                          *CSX Transportation, Inc.*

                                                  SHUMAKER, LOOP & KENDRICK, LLP

                                                  By:  /s/ James R. Carnes
                                                          James R. Carnes
                                                          *Counsel for Defendant,*
                                                          *CSX Transportation, Inc.*

**CERTIFICATE OF SERVICE**

I, Kendra L. Smith, hereby certify that a true and correct copy of the Defendant CSX Transportation, Inc.'s Memorandum in Support of its Motion for Reconsideration of the Denial of Summary Judgment as to Punitive Damages Based on Newly-Decided Authorities been served by a mailing a copy, U.S. mail, via email, this 25th day of September, 2017, to the following:

Nicholas I. Timko, Esq.
Kahn Gordon Timko & Rodriques, P.C.
20 Vessey Street – Suite 300
New York, NY 10007
*Attorney for Plaintiff*

/s/ Kendra L. Smith