# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JONATHAN LOPEZ, by his cousin and
duly appointed guardian ad litem,
RAMONA ILARRAVA

     Plaintiff,

     v.

CSX TRANSPORTATION, INC.,

     Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. 3:14-cv-257


JUDGE KIM R. GIBSON

## <u>MEMORANDUM OPINION</u>

This case arises from personal injuries suffered by Jonathan Lopez when he was hit by Defendant CSX Transportation's ("CSXT") train. Pending before the Court are the following twenty-four motions in limine filed by CSXT (each of which is accompanied by a brief in support) to :

1. Exclude Testimony Regarding Plaintiff's Alleged Need for Adaptive Equipment (ECF Nos. 150, 151);

2. Exclude Evidence Relating to Plaintiff's Allegations that CSXT Modified and/or Erased any Recorded Data (ECF Nos. 152, 153);

3. Exclude Evidence Relating to Plaintiff's Allegations that CSXT "Blames the Public" for Accidents at Crossings (ECF Nos. 154, 155);

4. Exclude Evidence Regarding Plaintiff's Competency to Participate in Trial (ECF Nos. 156, 157);

5. Exclude Evidence Regarding any Crossing Incidents or Accidents at Other than the Ferndale Crossing (ECF Nos. 160, 161);

6. Exclude Evidence Relating to Claims Decided on Summary Judgment (ECF Nos. 162, 163);

7. Exclude Evidence of the Parties' Financial Condition (ECF No. 164, 165);

8. Exclude all Documentary and Testimonial Evidence Regarding any Federal Railroad Administration Incident Reports Filed Related to this Matter (ECF Nos. 166, 167);

9. Exclude Evidence Regarding United States Hazardous Material Instruction for Rail Effective 1-1-12 (ECF Nos. 168, 169);

10. Exclude Evidence Regarding any Locomotive Incident History Reports (ECF Nos. 170, 171);

11. Exclude Evidence Regarding Photographs of a Locomotive Cab Interior (ECF Nos. 172, 173);

12. Exclude Evidence of any and all References to the Manual of Uniform Traffic Control Devices to show Negligence (ECF Nos 174, 175);

13. Exclude Evidence Regarding any Other Incidents or Accidents (ECF Nos. 176, 177);

14. Exclude Speculative Testimony Regarding Plaintiff's Phantom Pain Damage Claim (ECF Nos. 178, 179);

15. Exclude Post-Incident Classifications of Plaintiff (ECF No. 186, 187);

16. Exclude Evidence Regarding Locomotive Work Packages for CSXT 2529 and CSXT 4411 (ECF Nos. 190, 191);

17. Exclude Evidence Regarding all Track Inspection Documents and any Testimony Regarding Track Maintenance or Repair (ECF Nos. 184, 185);

18. Exclude the Opinions of Plaintiff's Expert Dr. Carl M. Berkowitz (ECF Nos. 136, 137)

19. Exclude the Opinions of Plaintiff's Expert Mr. Colon R. Fulk (ECF Nos. 140, 141);

20. Partially Exclude the Opinions and Testimony of Dr. Robert L. Rundorff, M.D. (ECF Nos. 146, 147);

21. Exclude Timothy Wagner's Deposition Testimony and Report (ECF Nos. 188, 189);

22. Preclude Plaintiff's Expert Mr. Richard Riley's Testimony Regarding his Status as an Amputee (ECF Nos. 180, 181);

23. Exclude the Opinions of Plaintiff's Expert Mr. Richard Riley (ECF Nos. 142, 143); and

24. Exclude the Opinions of Plaintiff's Expert Mr. Richard Riley Pursuant to Fed. R. Civ. P. 37 (ECF Nos. 144, 145).

Lopez's guardian ad litem has responded to many of the motions (ECF Nos. 201, 203, 205, 207, 209, 211, 212, 214, 215, 217, 218, 219, 223) and also filed briefs in opposition to some of the motions. (ECF Nos. 202, 204, 206, 208, 213, 216, 220, 224) The time for filing responses has passed. The motions are ripe for disposition.

For the following reasons, the Court:

1. **DENIES** Defendant's Motion to Exclude Testimony Regarding Plaintiff's Alleged Need for Adaptive Equipment (ECF Nos. 150, 151);

2. **GRANTS** Defendant's Motion to Exclude Evidence Relating to Plaintiff's Allegations that CSXT Modified and/or Erased any Recorded Data (ECF Nos. 152, 153);

3. **GRANTS** Defendant's Motion to Exclude Evidence Relating to Plaintiff's Allegations that CSXT "Blames the Public" for Accidents at Crossings (ECF Nos. 154, 155);

4. **GRANTS IN PART** and **DEFERS IN PART** Defendant's Motion to Exclude Evidence Regarding Plaintiff's Competency to Participate in Trial (ECF Nos. 156, 157);

5. **GRANTS IN PART** Defendant's Motion to Exclude Evidence Regarding any Crossing Incidents or Accidents at Other than the Ferndale Crossing (ECF Nos. 160, 161);

6. **DENIES** Defendant's Motion to Exclude Evidence Relating to Claims Decided on Summary Judgment (ECF Nos. 162, 163);

7. **DEFERS** Ruling on Defendant's Motion to Exclude Evidence of the Parties' Financial Condition (ECF No. 164, 165);

8. **GRANTS** Defendant's Motion to Exclude all Documentary and Testimonial Evidence Regarding any Federal Railroad Administration Incident Reports Filed Related to this Matter (ECF Nos. 166, 167);

9. **GRANTS** Defendant's Motion to Exclude Evidence Regarding United States Hazardous Material Instruction for Rail Effective 1-1-12 (ECF Nos. 168, 169);

10. **DENIES** Defendant's Motion to Exclude Evidence Regarding any Locomotive Incident History Reports (ECF Nos. 170, 171);

11. **DENIES** Defendant's Motion to Exclude Evidence Regarding Photographs of a Locomotive Cab Interior (ECF Nos. 172, 173);

12. **DENIES** Defendant's Motion to Exclude Evidence of any and all References to the Manual of Uniform Traffic Control Devices to show Negligence (ECF Nos 174, 175);

13. **GRANTS IN PART** Defendant's Motion to Exclude Evidence Regarding any Other Incidents or Accidents (ECF Nos. 176, 177);

14. **DENIES** Defendant's Motion to Exclude Speculative Testimony Regarding Plaintiff's Phantom Pain Damage Claim (ECF Nos. 178, 179);

15. **DENIES** Defendant's Motion to Exclude Post-Incident Classifications of Plaintiff (ECF No. 186, 187);

16. **DENIES** Defendant's Motion to Exclude Evidence Regarding Locomotive Work Packages for CSXT 2529 and CSXT 4411 (ECF Nos. 190, 191);

17. **GRANTS** Defendant's Motion to Exclude Evidence Regarding all Track Inspection Documents and any Testimony Regarding Track Maintenance or Repair (ECF Nos. 184, 185);

18. **DENIES** Defendant's Motion to Exclude the Opinions of Plaintiff's Expert Dr. Carl M. Berkowitz (ECF Nos. 136, 137);

19. **DENIES** Defendant's Motion to Exclude the Opinions of Plaintiff's Expert Mr. Colon R. Fulk (ECF Nos. 140, 141);

20. **DENIES IN PART** Defendant's Motion to Partially Exclude the Opinions and Testimony of Dr. Robert L. Rundorff, M.D. (ECF Nos. 146, 147);

21. **DENIES** Defendant's Motion to Exclude Timothy Wagner's Deposition Testimony and Report (ECF Nos. 188, 189);

22. Finds that Defendant's Motion to Preclude Plaintiff's Expert Mr. Richard Riley's Testimony Regarding his Status as an Amputee (ECF Nos. 180, 181) is **MOOT**;

23. Finds that Defendant's Motion to Exclude the Opinions of Plaintiff's Expert Mr. Richard Riley (ECF Nos. 142, 143) is **MOOT**; and

24. Finds that Defendant's Motion to Exclude the Opinions of Plaintiff's Expert Mr. Richard Riley Pursuant to Fed. R. Civ. P. 37 (ECF Nos. 144, 145) is **MOOT**.

## II.     Background[1]

CSXT filed its motions in limine on October 12, 2020.  Lopez filed responses and briefs in opposition to some of CSXT's motions on October 17 and October 19, 2020.  (ECF Nos. 201–220; 223–229)

## III.    Legal Standard

### A.  Relevance

Under Rule 402 of the Federal Rules of Evidence, relevant evidence is admissible unless the Constitution, a federal statute, the Federal Rules of Evidence, or rules prescribed by the Supreme Court provide otherwise.  Fed. R. Evid. 402.  Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence.  Fed. R. Evid. 401.  Rule 401 does not set a high standard for admissibility.  *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 109–10 (3d Cir. 1999).  The Third Circuit has explained:

> [R]elevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case.  Because the rule makes evidence relevant if it has any tendency to prove a consequential fact, it follows that evidence is irrelevant only when it has *no* tendency to prove the fact.

---

[1] A detailed description of the factual background of this case can be found in the Court's Memorandum Opinion Granting in Part and Denying in Part Summary Judgment.  (ECF No. 63)

*Blancha v. Raymark Indus.*, 972 F.2d 507, 514 (3d Cir. 1992) (citations and internal quotation marks omitted) (emphasis in original).

Under Rule 403, relevant evidence is inadmissible "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Rule 403 mandates a balancing test, "requiring sensitivity on the part of the trial court to the subtleties of the particular situation." *United States v. Vosburgh*, 602 F.3d 512, 537 (3d Cir. 2010). Importantly, "'unfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'" *Carter v. Hewitt*, 617 F.2d 961, 972 n.14 (3d Cir. 1980). "Unfair prejudice" means an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *McBride v. Petulla*, No. 3:16-cv-256, 2020 WL 1032535, at *1 (W.D. Pa. Mar. 3, 2020) (quoting Fed. R. Evid. 403 advisory committee's note to 1972 proposed rules).

## B. Expert Testimony

Under the Federal Rules of Evidence, a trial judge acts as a "gatekeeper" to ensure that "any and all expert testimony or evidence is not only relevant, but also reliable." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) (quoting *Kannankeril v. Terminex Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)). Therefore, when a party seeks to admit expert testimony, the Court must make a preliminary determination that the proffered expert meets the requirements of Rule 702. *Magistrini v. One Hour Martinizing Dry Cleaning*, 68 F. App'x 356, 356 (3d Cir. 2003) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993)). After the proffered expert has been found

by the Court to qualify as an expert, the expert is permitted under Rule 702 to testify in the form

of an opinion if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Third Circuit has interpreted Rule 702 as having three major requirements. *Pineda*, 520 F.3d at 244. First, the proffered witness must be qualified as an expert. *Id.* Second, the expert must testify about matters requiring scientific, technical, or specialized knowledge and base his or her opinions on reliable processes and techniques. *Id.* Third, the expert's testimony must assist the trier of fact. *Id.* The party offering the expert must prove each of these requirements by a preponderance of the evidence. *Mahmood v. Narciso*, 549 F. App'x 99, 102 (3d Cir. 2013) (citing *In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999)).

Rule 702 has "a liberal policy of admissibility." *Pineda*, 520 F.3d at 243 (citing *Kannankeril*, 128 F.3d at 806). Exclusion of expert testimony is the exception rather than the rule because "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Fed. R. Evid. 702 advisory committee's note to 2000 amendment (citing *Daubert*, 509 U.S. at 595).

## III.  Discussion

### 1.  The Court Denies Defendant's Motion to Exclude Testimony Regarding Plaintiff's Alleged Need for Adaptive Equipment

CSXT asserts that the Court should exclude testimony regarding Lopez's need for adaptive equipment because Lopez's treating physician concluded that Lopez does not need adaptive equipment and there is no evidence that Lopez needs adaptive equipment.  (ECF Nos. 150; 151 at 2–4)  CSXT contends that any testimony about adaptive equipment should be excluded under Rule 403 because it "contravenes the established facts of this case and is based solely on speculation."  (ECF No. 151 at 5)

Lopez[2] responds that Dr. Robert L. Rundorff, M.D., conceded during his deposition testimony that Lopez needed some adaptive equipment.  (ECF No. 217)  In particular, Dr. Rundorff stated that Lopez: "probably had some sort of shower bench [or] tub bench" that had been prescribed to him prior to leaving the hospital; will probably continue to need a bench in the shower for his entire life; would need new grab bars if they came out of the wall or if he moved; and would need crutches or a walker if he was unable to use his prosthesis in the future (e.g., if he had an infection and could not wear it).  (ECF No. 217-1 at 125–129, 144)

Dr. Rundorff is Lopez's treating physician and he stated during his deposition on October 26, 2015, that Lopez had not needed, and was not "currently in need," of adaptive equipment.[3] (ECF No. 151-1 at 2–3)  Dr. Rundorff's testimony does not foreclose the possibility that Lopez would need adaptive equipment in the future.  It is consistent with Dr. Rundorff's deposition

---

[2] All of the responses were filed by Lopez's guardian ad litem.

[3] Adaptive equipment is equipment designed to aid in an individual's daily life, such as bathroom rails. (ECF No. 151-1 at 2)

testimony that Lopez has come to need adaptive equipment in the five years since Dr. Rundorff was deposed or that he would be expected to need adaptive equipment in the future. Indeed, contrary to his statement that Lopez had not needed adaptive equipment, Dr. Rundorff also stated that Lopez needed crutches, a shower bench, and suggested that he may also need shower bars. (ECF No. 217-1 at 125–129) Although Dr. Rundorff said that a shower bench would not need to be replaced often, given Lopez's age, it is unlikely that the shower bench would never need to be replaced. Similarly, Lopez's crutches would certainly need to be replaced at some point. Dr. Rundorff's testimony is vague regarding whether Lopez currently needs shower bars, whether he will come to need them in the future, and to what extent Lopez's current needs for adaptive equipment are satisfied based on his current age and mobility as well as the current configuration of his bathroom. As it stands, it appears that Dr. Rundorff would opine that Lopez needs a shower bench and crutches. To the extent that Lopez needs shower bars, which is unclear based on Dr. Rundorff's deposition testimony, the shower bars may need to be repaired or replaced and, if Lopez moves to a new residence, new shower bars would be required to be installed.

Based on Dr. Rundorff's deposition, it appears that Dr. Rundorff will be able to testify about Lopez's future needs for adaptive equipment with sufficient specificity and certainty that it is not speculative. Dr. Rundorff's deposition testimony itself, however, does not provide sufficient detail and would be speculative. To the extent that Lopez can present non-speculative evidence that he needs or has needed adaptive equipment, or that he would likely come to need adaptive equipment in the future, it would be admissible.

## 2. The Court Grants Defendant's Motion to Exclude Evidence Relating to Plaintiff's Allegations that CSXT Modified and/or Erased any Recorded Data

CSXT moves to exclude evidence that CSXT modified or erased data regarding the speed of the train or the train's audible warnings because such evidence is irrelevant and any probative value is substantially outweighed by the prejudicial effect that such evidence would have. (ECF No. 153 2–5) CSXT contends that such evidence is not relevant because the Court granted summary judgment for CSXT on Lopez's claims based on the speed the train was travelling and the failure to issue proper audible warnings. As a result, the only claim left is based on the negligent handling and operation of the train for failing to slow or stop the train before it struck Lopez and punitive damages are limited to whether the train operators had a subjective appreciation that Lopez was in a position of peril and consciously disregarded the risk by failing to attempt to slow or stop the train. (ECF No. 153 at 2) The speed of the train, whether audible warnings were issued, and whether records of either were modified or erased are thus irrelevant for the remaining claim. In addition, CSXT contends that the Court has already found that no reasonable juror could conclude that CSXT tampered with the event recorder data. (*Id.* at 4) Lopez did not file a response.

The Court holds that evidence that CSXT modified any recorded speed or audible warning data is inadmissible because it is irrelevant to Lopez's remaining claim. Evidence that CSXT modified any data does not have any tendency to make a fact of consequence to determining whether the train operators were negligent in failing to slow or stop the train more or less probable. *See* Fed. R. Evid. 401. In addition, the claim that CSXT modified or tampered with this data is not supported by the evidence and is mere speculation. (ECF No. 63 at 15 n.5)

Further, any probative value from evidence that CSXT modified or tampered with recorded data is substantially outweighed by the danger of unfair prejudice because such evidence is highly speculative and inflammatory. *See Jacobs v. City of Philadelphia*, 212 F. App'x 68, 72 (3d Cir. 2006). However, to the extent that data having been deleted or erased is relevant to explain the absence of such data—e.g., that data was deleted in the ordinary course of business and that not having that data affects the accuracy of an expert's conclusion—the Court at this time does not exclude such evidence for these purposes.

### 3. The Court Grants Defendant's Motion to Exclude Evidence Relating to Plaintiff's Allegations that CSXT "Blames the Public for Accidents at Crossings

CSXT moves to exclude evidence that CSXT "blames the public" for accidents as crossings because such evidence is irrelevant, any probative value is substantially outweighed by the danger of unfair prejudice, and it would not be an admissible expert opinion. (ECF Nos. 154 at 2; 155)

Lopez's retained expert, Carl M. Berkowitz, Ph.D., PE, AICP, opines in his report that "[a] reasonable remedy [for the danger that a grade crossings poses to pedestrian safety] would be to recognize the potential hazard and take simple measures to ameliorate the effects of the dangers, *and stop blaming the public*." (ECF No. 155-1 at 31 (emphasis added)) Lopez contends that CSXT raised numerous affirmative defenses in its answer that amount to blaming Lopez for the accident, demonstrating that CSXT is in fact blaming the public for collisions at railroad crossings. (ECF No. 216 at 1–2) As a result, Lopez contends that it is a fair comment. (*Id.*)

The Court holds that evidence of the opinion that CSXT "blames the public" for accidents is irrelevant because it has no tendency to make a fact of consequence in the case more or less

probable and the probative value that the opinion would have is substantially outweighed by the danger of unfair prejudice. Further, as an expert opinion, it is an inflammatory and prejudicial opinion that is not based on Dr. Berkowitz's expertise, that is not based on facts or data, and that is not the product of reliable principles and methods. *See* Fed. R. Evid. 702. Such an opinion is a personal opinion of Dr. Berkowitz, not an expert opinion. To the extent that Lopez argues that this is just a "fair comment upon the evidence presented," the cases Lopez cites to support this argument are cases about counsel commenting on evidence during their closing arguments, not a witness commenting on a party's litigation strategy. (ECF No. 216 at 2–3)

### 4. The Court Grants in Part and Defers in Part Defendant's Motion to Exclude Evidence Regarding Plaintiff's Competency to Participate in Trial

CSXT moves to exclude testimony from Lopez's guardian ad litem, Ramona Ilarrava, regarding Lopez's competency or incompetency and his ability to participate in the trial because such testimony would be speculative, an improper opinion, and highly prejudicial to CSXT. (ECF Nos. 156 at 2; 157)

Lopez contends that there will be substantial evidence offered in this case regarding Lopez's mental state, both by himself and by CSXT, so Ms. Ilarrava should be able to provide her observations of Lopez's behavior and actions as someone who has known Lopez his entire life. (ECF No. 214 at 2) He also contends that she is not going to provide a medical opinion, but only a lay opinion about Lopez's competency and his ability to participate in the trial. (*Id.* at 2–3)

The jury will be informed by the Court that Ms. Ilarrava is Lopez's guardian ad litem, as she is a party to this litigation. The Court will also inform the jury that the Court appointed her as Lopez's guardian ad litem after finding him incompetent with respect to this case. The Court

will not permit evidence or opinions, lay or expert, regarding Lopez's competency with respect to the appointment of a guardian ad litem under Federal Rule of Civil Procedure 17(c). The decision of whether Lopez is incompetent under Rule 17(c) was for the Court to determine. The Court has made its determination and will not allow the parties to re-litigate whether Lopez is incompetent under Rule 17(c). Any evidence regarding whether Lopez was or was not incompetent under Rule 17(c) is not relevant and any probative value that it might have is substantially outweighed by the danger of confusing the issues, misleading the jury, and wasting time.

However, to the extent that Lopez's post-incident mental health becomes an issue in the case, Ms. Ilarrava would likely be able to testify about her personal observations of, and interactions with, Lopez. As someone who has known Lopez his entire life and has had substantial interaction with him, she is likely to be the type of person who can provide lay opinion regarding his competency. *See Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1196 (3d Cir. 1995) (listing "competency of a person" as an example of the types of evidence allowed under Rule 701). Lay opinion testimony is admissible only if it is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical or other specialized knowledge. Fed. R. Evid. 701. An opinion is helpful to the jury only "if it aids or clarifies an issue that the jury would not otherwise be as competent to understand." *Lauria v. National R.R. Passenger Corp.*, 145 F.3d 593, 600 (3d Cir. 1998). "[W]here a witness is not in a better position than the jurors to form an opinion or make an inference, the witness's opinion is inadmissible under Rule 701(b)." *United States v. Fulton*, 837 F.3d 281, 292 (3d Cir. 2016).

At this point, it is not clear to the Court whether and to what extent Lopez intends to offer evidence of his post-incident mental health. But, CSXT has listed numerous post-incident social media posts and emails written by Lopez about the case as exhibits it intends to offer at trial. (ECF No. 200 at 1–5) If evidence is offered that Lopez wants to dismiss the case or states that the accident was his fault, Ms. Ilarrava's testimony would certainly be relevant to place such statements into context and assist the jury in understating Lopez's mental state when he made those statements and his potential motivations for making such statements.

Therefore, the Court holds that evidence regarding Lopez's Rule 17(c) incompetency with respect to this case is not admissible. At this time, the Court does not rule on whether evidence of Lopez's post-incident mental health is relevant because the Court does not know what evidence the parties intend to introduce that may touch upon his mental health. If Lopez's mental health becomes relevant, then Ms. Ilarrava or another competent witness would likely be able to provide a lay opinion regarding Lopez's competency.

5. **The Court Grants in Part Defendant's Motion to Exclude Evidence Regarding any Crossing Incidents or Accidents at any Crossing Other than the Ferndale Crossing and Defendant's Motion to Exclude Evidence Regarding any other Incidents or Accidents**

CSXT's motion to "Exclude Evidence Regarding any other Incidents or Accidents" and brief in support (ECF Nos. 176, 177) is substantially the same as its motion to "Exclude Evidence Regarding any Crossing Incidents or Accidents at Other than the Ferndale Crossing" and brief in support (ECF Nos. 160, 161). Lopez's responses to both motions are identical. (ECF Nos. 203, 204, 212, 213) Accordingly, the Court considers these motions together.

CSXT moves to exclude any evidence of incidents or accidents involving other CSXT trains because such evidence is not relevant and any probative value is substantially outweighed by the danger of misleading the jury and unfair prejudice. (ECF Nos. 160 at 2; 161; 177) CSXT contends that incidents and accidents at other crossings are not relevant to Lopez's remaining claim because they are not substantially similar to the incident here. (ECF Nos. 161 at 3–4; 177 at 3–4)) Further, CSXT contends that under Rule 403 any similarity between incidents at other crossings and the incident here is outweighed by the prejudice that CSXT would suffer and because it would mislead the jury. (ECF Nos. 161 at 4–6; 177 at 4–6) In particular, CSXT argues that the jury could be led to find CSXT responsible, not based upon the facts of the accident here, but because CSXT has been involved in other accidents at other locations. (ECF Nos. 161 at 5; 177 at 5)

In response, Lopez states that he does not intend to offer evidence of any particular prior incident or accident at a railroad crossing. (ECF No. 204 at 3) Instead, Lopez seeks to offer evidence that "every year there are numerous rail grade crossing collisions, despite the presence of operable warnings" without mentioning any specific incident. (*Id.*) Lopez argues that evidence that collisions occur is relevant to the foreseeability "that a member of the public might not see or hear existing warnings, or might even intentionally disregard such warnings," which is probative to whether the train crew exercised reasonable care under the circumstances by failing to slow or stop the train to avoid a collision. (*Id.*) Lopez also contends that a limiting instruction can cure any Rule 403 concerns. (ECF No. 204 at 3–4)

Evidence of prior similar accidents is a proper and significant means of proving both the existence and knowledge of dangerous conditions. *Golias v. Norfolk S. Ry. Co.*, No. 2:07-CV-3, 2009

WL 10728719, at *5 (W.D. Pa. Apr. 20, 2009). "[K]nowledge of the likelihood of injury is imparted by information of like occurrences under similar circumstances, and is a fact to be considered by a jury in determining whether prior precautions were taken." *De Frischia v. New York C. R. Co.*, 307 F.2d 473, 476 (3d Cir. 1962). Regardless of why prior accidents are sought to be introduced, "there must be a basic similarity of conditions and facts between the prior accidents and the accident in question." *Golias*, 2009 WL 10728719, at *5 (quoting *Nat'l Freight, Inc. v. Se. Pa. Transp. Auth.*, No. CIV.A. 87-3334, 1988 WL 108408, at *3 (E.D. Pa. Oct. 12, 1988)). Where the requisite similarity of facts is not present, the probative value of such prior accident evidence will, in most circumstances, be outweighed by its prejudicial or misleading nature. *Id.*; *Nat'l Freight*, 1988 WL 108408, at *3; *see Evans v. Pennsylvania R.R. Co.*, 255 F.2d 205, 210 (3d Cir. 1958); *see also Stormer v. Alberts Constr. Co.*, 165 A.2d 87, 89 (Pa. 1960) (limiting the admissibility of evidence of prior accidents to those situations where the accidents "occurred at substantially the same place and under the same or similar circumstances").

The Court holds that evidence of specific incidents or accidents is not relevant, but general evidence that collisions between trains and pedestrians occur, information on the frequency at which they occur, and whether they occur despite the presence of different types of warning devices is relevant. Such information is relevant as to whether the train operators were negligent by not recognizing that Lopez was in a position of peril and believing that he would stop rather than proceed onto the tracks. If collisions between trains and pedestrians were rare occurrences or tended to occur only in circumstances different from those here, the failure to slow or stop before striking Lopez might be less likely to be negligent because a reasonable person would assume that a pedestrian would stop prior to the railroad tracks. For the same reasons, such

information also helps inform at what point Lopez was in a position of peril and when the train operators should have recognized that Lopez was in a position of peril. Because such information about train collisions is generic and does not suggest who it at fault in such collisions, the Court finds that the probative value of such evidence is not substantially outweighed by the prejudice that CSXT would suffer if such evidence were introduced.

### 6. The Court Denies Defendant's Motion to Exclude Evidence Relating to Claims Decided on Summary Judgment

CSXT moves to exclude evidence related to Lopez's claims on which the Court granted summary judgment because such evidence is irrelevant and unduly prejudicial. (ECF Nos. 162 at 2; 163) CSXT argues that six categories of evidence are irrelevant: (1) evidence on negligence allegations based upon the train's speed; (2) evidence on negligence allegations based upon negligent lack of pedestrian warning devices and inadequacy of pedestrian warning devices at the Ferndale Crossing; (3) evidence on negligence allegations based on negligent maintenance of the Ferndale Crossing; (4) evidence on negligence allegations based on negligent failure to issue proper audible warnings to announce the approach of the train; (5) evidence that CSXT failed to follow its internal rules; and (6) evidence that CSXT negligently failed to sound the horn in an emergency. (ECF No. 163 at 3–4)

Lopez states that all the evidence he intends to offer will be relevant, material, and probative; evidence that was relevant to other claims are also relevant to the claim here and to CSXT's affirmative defenses; and CSXT does not specify what evidence they are referring to or specifically how it is not relevant. (ECF No. 211 at 1–2)

The Court denies CSXT's motion because it fails to delineate specific evidence that it seeks to exclude or explain why such specific evidence is not relevant. As Lopez notes, evidence which was relevant to Lopez's claims that were decided at summary judgment may also be relevant to his remaining claim and CSXT's affirmative defenses. Without identifying the specific evidence CSXT seeks to exclude or the specific basis on which CSXT seeks to exclude the evidence, the Court is at this point unable to evaluate whether such evidence is admissible. If Lopez seeks to admit evidence that CSXT believes is inadmissible, it may make an appropriate objection at that time.

### 7. The Court Defers Ruling on Defendant's Motion to Exclude Evidence of the Parties' Financial Condition

CSXT contends that evidence of its financial information, wealth, or condition: (1) is not relevant unless and until the Court determines there is sufficient evidence to warrant punitive damages; (2) should be excluded even if there is sufficient evidence to warrant punitive damages because such evidence is highly prejudicial and would serve no purpose other than to inflame the jury because it is a large out-of-state corporation; and (3) should be excluded because Lopez has not complied with the disclosure requirements in Federal Rule of Civil Procedure 26. (ECF No. 164 at 1–2; 165) Lopez did not file a response.

The Court holds that Lopez may present evidence that is relevant to punitive damages so long as it relates to liability. A punitive damages claim must be supported by evidence sufficient to establish that: (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed; and (2) he acted in conscious disregard of that risk. *Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., Inc.,* 801 F.3d 347, 360 (3d Cir. 2015) (citing *Hutchison ex rel. Hutchison*

*v. Luddy*, 870 A.2d 766, 772 (Pa. 2005)). Courts frequently decline to grant pretrial motions to exclude evidence related to punitive damages without prejudice so that the moving party may renew any objections to punitive damages claims at trial based upon a fully developed factual record. *R.D. v. Shohola, Inc.*, No. 3:16-cv-01056, 2019 WL 6211365, at *4 (M.D. Pa. Nov. 20, 2019).

The Court agrees with the approach taken by other courts and reserves its ruling on whether the jury may be charged with a punitive damages claim until the end of trial with a fully developed factual record. Lopez may present evidence that is relevant both to liability and punitive damages during his case-in-chief. At the end of Lopez's case-in-chief, but prior to resting, CSXT may move to exclude the punitive damages claim. If the Court denies the motion, Lopez may then introduce evidence solely related to punitive damages, such as CSXT's wealth.

### 8. The Court Grants Defendant's Motion to Exclude Evidence Regarding United States Hazardous Material Instructions for Rail Effective 1-1-12

CSXT moves to exclude "evidence regarding the United States Hazardous Material Instructions for Rail Effective 1-1-12" because such evidence is not relevant to Lopez's claim and any relevance it may have is substantially outweighed by the danger of unfair prejudice and misleading the jury. (ECF Nos. 168 at 2; 169 at 3–5) CSXT contends that the instructions are not relevant because the claim does not involve hazardous cargo aboard a locomotive and the instruction does not contain any information regarding train handling and operations. (ECF No. 169 at 2) Lopez has not filed a response.

The Court holds that "evidence regarding the United States Hazardous Material Instructions for Rail Effective 1-1-12" is not admissible because there is no indication that it is relevant. Although the Court has not been provided a copy of the instruction, there is no claim

or indication that the train at issue here was carrying hazardous cargo or that regulations related to hazardous cargo would be relevant to the issues in this case. Even assuming the train here were carrying hazardous cargo, there is no indication that regulations for carrying hazardous cargo would have any relevance for train operations and handling with respect to slowing or stopping the train under the circumstances present here.

### 9. The Court Denies Defendant's Motion to Exclude Evidence Regarding Photographs of a Locomotive Cab Interior

CSXT contends that certain photographs of a locomotive cab interior (ECF No. 173-1 at 2–5) should be excluded because they are not relevant and any probative value would be substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. (ECF Nos. 172 at 2; 173) CSXT argues the photographs are not relevant because: (1) they are not photographs or depictions of the locomotive cab interior at issue in this case; (2) they are pictures of a Union Pacific locomotive, not a CSXT locomotive; and (3) the configuration of instruments in different locomotive cabs can be different. (ECF No. 173 at 3) CSXT contends that the photographs would be "highly confusing, misleading, and prejudicial" because they "would confuse the jury and provide a false sense of the configuration of the cab environment of the CSXT locomotive"; "would fail to provide the jury with a relevant and accurate depiction of the environment of the CSXT locomotive actually involved in the incident"; and would "only serve to confuse and mislead the jury because it does not establish the proximity of the instruments, types of instruments and general layout of the controls in a CSXT locomotive." (ECF No. 173 at 5)

Lopez argues that the photos will be used for demonstrative purposes with witnesses to help the jury visualize the locomotive, the layout of the locomotive, and the locations of the operators and relevant equipment in the locomotive cab. (ECF No. 202 at 1–4) Lopez notes that, except for the owner of the train, CSXT does not identify anything in particular in the photographs that is wrong, confusing, or misleading. (ECF No. 3) Lopez further argues that any objections that CSXT has to the photographs not being sufficiently accurate goes to the weight, not the admissibility, of the photographs and that CSXT will have the opportunity to address any incorrect, confusing, or misleading aspects of the photographs through cross-examination. (*Id.*)

"[I]tems offered for purposes of illustration and clarification, such as photographs, are admissible if they are 'sufficiently explanatory or illustrative of relevant testimony in the case to be of potential help to the trier of fact.'" *Zaprala v. USI Servs. Grp., Inc.*, No. CIV.A. 09-1238, 2013 WL 1148335, at *3 (E.D. Pa. Mar. 20, 2013) (citation omitted).

The Court finds that the photographs are admissible as demonstrative aids because they would assist the jury in understanding testimony regarding the interior of the locomotive cabs and the location of items and people within locomotive cabs. Lopez does not intend to admit the photographs as depictions of the actual locomotive cab involved in the accident in this case. Instead, the photographs are demonstrative exhibits by his expert witnesses to assist the jury in understanding the layout of the interior of a locomotive cab, what the interior of a locomotive looks like, and the locations of individuals and relevant items within the locomotive cab. As such, there is no requirement that the photographs be substantially similar to the locomotive involved here. *See Russo v. Mazda Motor Corp.*, No. CIV. A. 89-7995, 1992 WL 309630, at *2 (E.D. Pa. Oct. 19, 1992). Any dissimilarities between the photographs and the locomotive involved here goes to the

weight of the evidence, not the admissibility. *Id.* Indeed, as noted by Lopez, several of these photographs were used by witnesses at their depositions to depict the locations of individuals in the cab and the location of the emergency brake. (ECF No. 202 at 1–2) Further, the jury will not be confused or misled because the witness through whom these photographs would be used would need to explain what the photographs are and why they are relevant. In addition, CSXT will have the opportunity through cross-examination to clarify any confusion.

### 10. The Court Denies Defendant's Motion to Exclude any and all Reference to the Manual of Uniform Traffic Control Devices to show Negligence

CSXT contends that the any evidence regarding the Manual of Uniform Traffic Control Devices should be excluded because such evidence is not relevant and any probative value is substantially outweighed by the danger of unfair prejudice and confusing the issues. (ECF Nos. 174 at 2; 175) CSXT argues that the manual is not relevant because it concerns national standards for traffic control devices—such as road markings, highway signs, and traffic signals—and CSXT was granted summary judgment on the claims where such information would have been relevant. (ECF No. 175 at 3–4) CSXT also argues that admitting this evidence would risk the jury impermissibly considering this evidence on the issue of punitive damages. (*Id.* at 4–4) CSXT specfically seeks to exclude: (1) the Manual of Uniform Traffic Control Devices; (2) all references to the manual by Dr. Berkowitz in his report; and (3) any testimony regarding the manual from Dr. Berkowitz or any other witness. (ECF No. 174 at 2–3; 175 at 5)

Lopez contends that the manual is relevant for two reasons. First, the manual informs the train crew's knowledge of crossings and existing warnings which is relevant to their "subjective appreciation of the risk from the specific hazard in front of them." (ECF No 220 at 3) The train

operators' knowledge of the different warnings that exist goes to the foreseeability that a member of the public might not see or hear the existing warnings. (*Id.*) Second, Lopez's actions are to be "judged based on the subjective awareness of the plaintiff and existing science and knowledge regarding human reaction, or lack thereof, to various types of warnings." (*Id.*) Lopez also notes that this evidence is relevant to some of CSXT's affirmative defenses, including Lopez's negligence. (*Id.*) Finally, Lopez states that a jury instruction would alleviate any Rule 403 issues. (*Id.* at 4)

Plaintiff's only remaining claim is whether the train operators were negligent in failing to slow or stop the train before striking Lopez. The traffic control devices that were in place at the Ferndale Crossing, the types of traffic control devices that exist, and whether the devices at the Ferndale Crossing met the national standards are relevant because they inform when Lopez was in a position of peril, the train crew's subjective belief about whether Lopez was in a position of peril, whether the train crew reasonably believed that Lopez would stop rather than proceed onto the tracks. Further, the manual is relevant to CSXT's affirmative defenses that Lopez was negligent. (ECF No. 76 at 4, 8–9) In determining whether Lopez was negligent, the manual is relevant to inform what kinds of signals exist, the effectiveness of different types of signals, and whether the Ferndale Crossing met the national standards. The signals that existed at the Ferndale Crossing and how those differed from other signals that exist are relevant to determining what "a reasonably prudent person" would expect to encounter at an active railroad crossing when there is a train approaching. *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998).

The Court finds that the probative value of the manual is not substantially outweighed by the danger of unfair prejudice or confusing the issues. (ECF No. 175 at 5) If CSXT is concerned about how the jury will consider evidence of the manual, it can request a limiting instruction.

### 11. The Court Denies Defendant's Motion to Exclude Speculative Testimony Regarding Plaintiff's Phantom Pain Damage Claim

CSXT contends that Lopez's "phantom pain" damage claim should be excluded because it is speculative. (ECF Nos. 178 at 2; 179) Despite Dr. Rundorff stating that Lopez had experienced phantom pain and continued to experience it, CSXT argues that future phantom pain is speculative because the phantom pain may go away or it may continue for Lopez's entire life, but there is no way to know what will happen in the future to Lopez's phantom pain. (ECF No. 179 1–2)

Lopez contends that he has suffered from, and continues to suffer from, phantom pain. (ECF No. 206 at 2–4) Therefore, he argues that the possibility that the pain might disappear does not make future pain inadmissibly speculative. (*Id.*)

A jury may not award damages based on speculation or conjecture. *Carroll v. Philadelphia Hous. Auth.*, 650 A.2d 1097, 1100 (Pa. Commw. Ct. 1994). Damages are speculative if "the uncertainty concerns the fact of damages, not the amount." *Id.* But, "where the issue in question is one of prognosis, 'a doctor cannot be required to express his opinion with the definiteness required in a causation question.'" *Martin v. Johns-Manville Corp.*, 494 A.2d 1088, 1094 (Pa. 1985) (quoting *Boyle v. Pa. R.R. Co.*, 170 A.2d 865, 867 (Pa. 1961)). Where a doctor's opinion is that the plaintiff will "gradually improve" or that an injury may "possibly be permanent or may possibly get better within a year" the uncertainty of these "honest medical opinion[s] should not be the

basis for any finding by the jury of *permanent* injury but is sufficient, on the other hand, for the jury to find some future disability." *Boyle*, 170 A.2d at 867 (quoting *Stevenson v. Pa. Sports & Enters., Inc.*, 93 A.2d 236, 240 (Pa. 1952)) (emphasis in original). On the other hand, the "mere possibility of future consequences" from an injury to the plaintiff is too speculative. *Lorch v. Eglin*, 85 A.2d 841, 844 (Pa. 1952).

The Court finds that the phantom pain damage claim is not impermissibly speculative. Unlike in *Lorch*, Lopez has suffered and continues to suffer phantom pain; Lopez suffering such pain is not a "mere possibility." *Id.* That the pain may go away in the future does not render Lopez's pain impermissibly speculative. Dr. Rundorff's prognosis that Lopez's phantom pain could go away or could continue for Lopez's whole life, and that there is no way to know whether it will go away in the future or not, is analogous to the opinion that it "may 'possibly be permanent or may possibly get better within a year,'" which is a proper damages claim in Pennsylvania and the jury may find "some future disability." *Boyle*, 170 A.2d at 867 (quoting *Stevenson*, 93 A.2d at 240). The only limitation on such a damages claim is that it cannot be the basis for a finding by the jury that his phantom pain will be permanent. *Id.* (quoting *Stevenson*, 93 A.2d at 240).

### 12. The Court Grants Defendant's Motion to Exclude Evidence Regarding all Track Inspection Documents and any Testimony Regarding Track Maintenance or Repair

CSXT moves to exclude any evidence regarding track inspection documents or testimony regarding track maintenance or repair because: (1) the evidence is not relevant to the remaining claim, (2) Lopez never raised any allegations that defects in the track caused the incident, and (3) any relevance is substantially outweighed by the danger of unfair prejudice, misleading the

jury, or confusing the issues. (ECF No. 184 at 2) CSXT contends that maintenance and repair documents and similar testimony "have nothing to do with the handling and operation of the train" so are not relevant to Lopez's claim. (ECF No. 185 at 3) Lopez has not filed a response.

The Court holds that evidence and testimony regarding track maintenance and repair is not relevant. Such evidence would not make any fact that is of consequence in determining whether the train crew was negligent for failing to slow or stop the train before striking Lopez more or less probable. The condition of the track in no way relates to, or impacts, the handling and operation of the train and any negligence by not slowing or stopping the train sooner.

### 13. The Court Denies Defendant's Motion to Exclude Post-Incident Classifications of Plaintiff

CSXT moves to exclude any documents or evidence of CSXT's post-incident references to Lopez as a "trespasser" because such references are irrelevant and any probative value is substantially outweighed by the danger of unfair prejudice and misleading the jury (ECF Nos. 186, 187 at 1–6) CSXT contends that the "trespasser designation" is a "technical term-of-art used to refer to an individual within a railroad crossing, whenever a CSXT maintains the right-of-way" and that since Lopez was not a legal trespasser, references to him as a trespasser after the fact are irrelevant because it did not impact the duty owed to Lopez. (ECF No. 187 at 1–3) CSXT contends that, not only would Lopez being referred to as a "trespasser" confuse and mislead the jury, it contends that it would be prejudiced by it because it believes Lopez is going to use the references to him as a trespasser to incite the jury and claim that CSXT lied when it referred to Lopez as a trespasser. (ECF No. 187 at 4–6)

Lopez contends that the use of the word "trespasser" to refer to Lopez is relevant to: (1) whether CSXT, through its employees, exercised reasonable care, and (2) whether punitive damages are appropriate because it goes to the defendant's subjective appreciation of the risk of harm and whether there was a conscious disregard of that risk. (ECF Nos. 207, 208 at 3) Lopez contends that the train operators referring to Lopez as a trespasser immediately after the accident is strong evidence of their state of mind. (ECF No. 208 at 3–4)

The Court denies CSXT's motion to exclude references to Lopez as a trespasser. What the train operators meant when they referred to Lopez as a trespasser is a question for the jury, not the Court to decide under Rules 401 or 403. CSXT may elicit from the witnesses what they meant when they referred to Lopez as a trespasser; and Lopez may contend that the use of the word trespasser is suggestive of their mindset, their vigilance, and that they incorrectly believed they owed a lower duty of care. The jury would not be confused or misled by witnesses or documents referring to Lopez as a trespasser, and an explanation for why that term is used can be easily explained by a witness through either direct or cross-examination. Referring to Lopez as a trespasser, when CSXT has an opportunity to present an explanation for the use of that term, would not prejudice CSXT, mislead the jury, or incite the passions of the jury.

### 14. The Court Denies Defendant's Motion to Exclude Timothy Wagner's Deposition Testimony and Report

CSXT contends that Timothy Wagner's testimony and Report should be excluded because (1) they are irrelevant to the remaining claim, and (2) they are based on hearsay, not on his own personal knowledge, because his report merely recites what Police Chief Arthur Boring told him about the incident. (ECF No. 189 at 5)

Lopez contends that Wagner took pictures of the Ferndale Crossing, his testimony is relevant to authenticate those photographs, and that Wagner will provide "factual testimony about the crossing." (ECF No. 209 at 1–2) He denies that Wagner previously offered any opinion regarding CSXT's negligence. (*Id.*)

The Court holds that Wagner may testify about his observations of the Ferndale Crossing and may testify to lay the appropriate foundation for the photographs. Lopez's response suggests that he does not intend to have Wagner testify as to any opinions or offer any hearsay. Of course, if Wagner were to testify as to inadmissible hearsay or offer an improper opinion, CSXT may object at that time.

### 15. The Court Denies Defendant's Motion to Exclude Evidence Regarding Locomotive Work Packages for CSXT 2529 and CSXT 4411

CSXT moves to exclude Locomotive Work Packages for CSXT2529 and CSXT4411 because they contain "no information regarding the remaining claim involving train handling and operation" and any probative value they may have is substantially outweighed by the danger of unfair prejudice and misleading the jury. (ECF No. 190; 191 at 3–5) Lopez did not file a response.

The Court denies CSXT's motion to exclude the Locomotive Work Packages in their entirety. CSXT did not provide the Court a copy of the Locomotive Work Packages along with its motion. CSXT states that the Locomotive Work Packages "document the routine inspections, repairs and maintenance of the locomotives." (ECF No. 191 at 5) Assuming the Locomotive Work Packages contain such information, the Court would agree that they are not directly relevant to whether the train crew's handling and operation of the train was negligent for failing to slow or stop before striking Lopez. However, insofar as the work packages indicate that relevant aspects

of the locomotives were or were not in good working order—*e.g.*, that the emergency brake was in good working order at the time the train struck Lopez—such evidence is relevant. It would tend to exclude the possibility that the failure to slow or stop before striking Lopez was the result of the locomotive themselves. It would also tend to show that the train could have stopped had the emergency brake been timely engaged, and thus such evidence would tend to suggest that the cause of the accident was the train crew themselves. In other words, the evidence that the locomotives were in good working order could make it more probable that the cause of the accident was the negligence of the train crew and, specifically, that the negligence of the train crew was the proximate cause of the train striking Lopez.

The probative value of the Locomotive Work Packages, insofar as they document that relevant aspects of the train were in good working order at the time the train struck Lopez, are not substantially outweighed by the danger of unfair prejudice or misleading the jury. CSXT asserts that the Locomotive Work Packages would be "highly confusing, misleading, and prejudicial" but does not explain *why* they would be. Instead, CSXT simply reiterates that the work packages are not relevant. (ECF No. 191 at 5) The Court struggles to find any prejudice from evidence that relevant aspects of the locomotives were, or were not, in good working order at the time of the accident. Although simply admitting hundreds (or thousands) of pages of inspection, repair, or maintenance logs to the jury without any explanation of what they are or what they mean could certainly be confusing to the jury, such risk of confusion would be mitigated by a witness explaining what the records indicate. If CSXT has specific aspects of the Locomotive Work Packages that it believes are irrelevant or would be prejudicial, CSXT is free to raise that more specific objection to the work packages.

### 16. The Court Denies Defendant's Motion to Exclude Evidence Regarding any Locomotive Incident History Reports

CSXT moves to exclude evidence of the "Locomotive Incident History Reports for Locomotives CSXT2529 and CSXT4411." (ECF Nos. 170, 171). The reports include repair and maintenance information for the locomotives, both before and after the incident here. But CSXT contends that such information is not relevant because Lopez's claim is for negligent handling and operation of the train by not slowing or stopping before it struck Lopez and the claim does not allege that the locomotives were defective. (ECF No. 171 at 3) Further, determining whether the operators of the train were negligent in failing to slow or stop the train does not depend on or involve the condition of the locomotives. (*Id.*) CSXT also contends that any probative value the reports would have is substantially outweighed by the danger of unfair prejudice and misleading the jury. (ECF No. 171 at 3) Lopez did not filed a response.

The Court denies CSXT's motion to exclude the locomotive incident history reports in their entirety. CSXT did not provide the Court a copy of the reports. CSXT states that the incident history reports "detail repairs and maintenance performed on the locomotives after an incident." (ECF No. 171 at 3) Assuming the reports contain such information, the report are relevant for the same reasons as the work packages, discussed above. The work packages would be relevant if they indicate that relevant aspects of the locomotives were or were not in good working order at the time of the incident. Also, for the same reasons discussed above about the work packages, the Court finds that the probative value of the incident reports is not substantially outweighed by the danger of unfair prejudice or misleading the jury. If CSXT has specific aspects of the

reports that it believes would be irrelevant or prejudicial, CSXT may raise a more specific objection during trial.

### 17. The Court Grants Defendant's Motion to Exclude all Documentary and Testimonial Evidence Regarding any Federal Railroad Administration Incident Reports Filed Related to this Matter

CSXT moves to exclude any Federal Railroad Administration ("FRA") Incident Reports about the incident in this case because such reports are inadmissible under federal law. (ECF Nos. 166 at 1–2; 167) Lopez has not filed a response.

Railroad carriers are required to file a report with the Secretary of Transportation "on all accidents and incidents resulting in injury or death to an individual." 49 U.S.C. § 20901(a). "No part of an accident or incident report filed by a railroad carrier under section 20901 of this title or made by the Secretary of Transportation under section 20902 of this title may be used in a civil action for damages resulting from a matter mentioned in the report." 49 U.S.C. § 20903; *see* 49 C.F.R. § 225.7(b).

CSXT seeks to exclude any such reports that were filed regarding the incident at issue in this case, and specifically seeks to exclude: (1) FRA Form 6180.57, Highway-Rail Grade Crossing Accident/Incident Report (ECF No. 167-1 at 2); and (2) FRA Form 6180.97, Initial Rail Equipment Accident/Incident Record (ECF No. 167-1 at 3–5). Both forms fall within § 20901(a) and are inadmissible in this case. *See* 49 C.F.R. §§ 225.7(b), 225.11, 225.19(b), 225.21. Therefore, the Court grants CSXT's motion to exclude FRA incident reports about the incident in this case. *See Zimmerman v. Norfolk S. Corp.*, 706 F.3d 170, 186 (3d Cir. 2013).

### 18. The Court Denies Defendant's Motion to Exclude the Opinions of Plaintiff's Expert Mr. Colon R. Fulk

CSXT moves to exclude the opinions of Colon R. Fulk, arguing that his opinions are not relevant, are speculative, and are not the product of reliable scientific principles and methods. (ECF Nos. 140, 141) CSXT contends that "in almost all respects" Fulk's opinions were rendered irrelevant by the Court's summary judgment decision. (ECF No. 141 at 2–3) However, CSXT does not explain in its motion what opinions it believes are now irrelevant. CSXT contends that any of Fulk's opinions regarding the negligent handling and operation of the train for failing to slow or stop before striking Lopez are not the product of reliable principles and methods. (ECF No. 141 at 3–6) It contends that his opinions are speculation because: (1) they are based solely upon self-serving statements that are unsubstantiated; (2) he fails to use sufficient facts or data in support and he only cites to a limited number of references in the depositions as support; (3) he did not visit the Ferndale Crossing or measure and calculate stopping distances; and (4) he "did not apply any method in arriving at his 'conclusions' regarding the crew's 'train handling.'" (ECF No. 141 at 4)

Further, CSXT contends that Fulk relied on a photograph of a train cab that was neither the locomotive cab involved in this accident nor a CSXT train at all; that he cites to no rule, requirement, or regulation to support his conclusion that the emergency brake was not deployed soon enough; and that he relies on his own subjective belief of what the train crew should have done. (ECF No. 141 at 5)

CSXT specifically identifies three opinions of Fulk that they object to: (1) the train crew was inattentive; (2) the train crew failed to keep the proper lookout; and (3) the train crew failed to timely apply the emergency brake. (ECF No. 141 at 5–6)

Lopez argues that Fulk's stating that it would be "mere speculation to opine as to what was going on inside the cab of the locomotive" was taken out of context by CSXT because the next sentence of his report is: "However, it certainly is my opinion the actions were not that of a well trained and prudent train crew." (ECF No. 224 at 4; 141-1 at 18) Fulk then goes on to state:

> During my 40 years of railroading, I have experienced it to be extremely rare that the one crew member furthest away form the emergency brake valve is the person that applies emergency braking to the train. Both, the engineer and the conductor, sitting in the front seat, had an emergency brake valve within inches of their reach and neither employee attempted to stop the train.

(ECF No. 141-1 at 18) The Court finds that, when read as a whole, Fulk's opinion is not mere speculation but based on his knowledge and experience. In some sense, Fulk is correct that it is mere speculation to opine on what was going on inside the cab since he was not there, but his opinion is that, whatever was going on, the crew was inattentive because, had they been attentive, they would have applied the emergency brake sooner.

CSXT contends that Fulk's opinion that the train crew failed to keep the proper lookout ignores the contrary testimony of Rhoads that the train crew were being diligent, does not consider that Churby was a trainee and that there were three people in the cab rather than the normal two, and Fulk cites to no rule or regulation that the third person should have pulled the emergency brake. (ECF No. 141 at 5–6) Lopez contends that Rhoads was a certified and qualified conductor. (ECF No. 224 at 4) The Court finds that this opinion is permissible for the same reasons as the previous opinion. Indeed, they are virtually identical—the train crew was

inattentive and the train crew failed to keep a proper lookout. In reaching his opinions, Fulk reviewed and relied on a number of items, including videos and the testimony of the train operators. Of course, he also relies on his own experience. Essentially, CSXT's objections with this opinion are that it disagrees with the foundation and it believes that the evidence actually shows the opposite—that the crew was attentive. CSXT is free to present evidence to this effect and to make these arguments at trial, but these objections are insufficient for the Court to exclude Fulk's testimony.

CSXT objects to Fulk's opinion that the train crew failed to timely apply the emergency brake because it contends that such an opinion is based merely on his own personal speculation and not on any facts or reliable methodology; he does not state when the train crew should have applied the emergency brake; and does not calculate whether applying the emergency brake at that time would have avoided the collision. (ECF No. 141 at 6) For the same reasons as the previous two opinions, the Court finds this opinion admissible. In reaching this conclusion, Fulk details the deposition testimony of Churby, Rhoads, and Spicula. (ECF No. 141-1 at 13–18) Given Fulk's extensive training and experience, his opinion that the crew failed to timely apply the emergency brake based on their descriptions of what occurred is permissible. Accordingly, the Court does not exclude the expert testimony of Fulk.

### 19. The Court Denies in Part Defendant's Motion to Partially Exclude the Opinions and Testimony of Dr. Robert L. Rundorff, M.D.

CSXT moves to exclude two opinions and related testimony of Dr. Rundorff. (ECF Nos. 146, 147) First, CSXT contends that testimony and opinions regarding Lopez's work restrictions/impairments and memory loss as a result of Lopez suffering a concussion and

traumatic brain injury should be excluded because Dr. Rundorff admitted that he had insufficient facts to reach these conclusions because Lopez failed to attend the necessary treatment and therapy appointments. (ECF Nos. 146 at 2; 147 at 3) Second, CSXT argues that Dr. Rundorff's testimony and opinions regarding Lopez's back pain should be excluded as unreliable because Dr. Rundorff was not aware of Lopez's previous back injuries and, therefore, did not account for this alternative source of Lopez's back pain.

Lopez agrees with CSXT that Dr. Rundorff stated that he could not reach any medical conclusions about whether Lopez's memory loss or traumatic brain injury would affect his ability to work and that he did not intend to attempt to elicit any such opinions from Dr. Rundorff. (ECF No. 218 at 3) Therefore, the motion with regard to this evidence is moot since both parties agree that Dr. Rundorff did not give such an opinion.

"In considering the reliability of testimony on causation, a court should consider whether the expert has adequately accounted for obvious alternative explanations." *Miller v. United States*, 287 F. App'x 982, 984 (3d Cir. 2008) (per curiam) (citation and internal quotation marks omitted). Dr. Rundorff repeatedly references a 2007 MRI during his deposition, comparing Lopez's MRI after the accident to it, and states that "the fact that [Lopez] had an MRI of his back in 2007 would suggest that at some point in the past he must have had some issues with his back." (ECF No. 218-1 at 202) Dr. Rundorff considered the 2007 MRI in his evaluation and treatment of Lopez. (*Id.* at 182) During the deposition, Dr. Rundorff was asked if Lopez's prior conditions, in particular a herniated disc, were a factor in causing him ongoing pain after the accident and Dr. Rundorff opined that it was his opinion that Lopez's "ongoing back problems primarily relate to the soft tissue pain, which is soft tissue in nature." (*Id.* at 183)

The Court holds that Dr. Rundorff's opinion regarding Lopez's back pain is admissible. In *Miller,* the expert's opinion was based solely on "subjective complaints" and the resolution of symptoms after surgery. *Miller,* 287 F. App'x at 984. Here, however, Dr. Rundorff also had an MRI on which to base his opinion and the 2007 MRI to which he could compare it. (*Id.* at 182–185) Although Dr. Rundorff was not aware of why Lopez had an MRI of his back in 2007, the existence of the 2007 MRI alerted him to some pre-existing back injury. Further, that he compared the two MRIs in arriving at his conclusions demonstrates that he did account for alternative sources of causation that would have occurred prior to the 2007 MRI.

### 20. The Court Denies Defendant's Motion to Exclude the Opinions of Plaintiff's Expert Dr. Carl M. Berkowitz

CSXT moves to exclude the opinions of Dr. Carl Berkowitz, arguing that his opinions are irrelevant, that he is not qualified to render an opinion regarding train handling, that his opinions lack foundation and are speculative and unreliable, and he fails to utilize any methods in arriving at his opinions and conclusions. (ECF No. 136 at 2) CSXT objects to Dr. Berkowitz's opinions that CSXT personnel were negligent in the operation and handling of the train by: (1) not providing the proper lookout; (2) failing to do anything at their disposal to avert the collision; (3) choosing not to slow the train upon immediately observing Lopez; and (4) failing to properly control the train. (ECF No. 137 at 4–5) CSXT contends that, in reaching these opinions, Dr. Berkowitz: (a) fails to use sufficient facts or data in support of his conclusions because he does not rely on any record evidence to reach his conclusions; (b) his opinions are not the product of reliable principles and methods because he does not articulate in his report any methods that he used; and (c) his opinions are based solely on his own subjective beliefs. (ECF No. 137 at 5)

Further, CSXT contends that Dr. Berkowitz lacks qualifications and a foundation for his opinions because his background "deals with crossing design, planning and safety—not train handling and operation"; he has never been a train operator; he has never been to the Ferndale Crossing; he has never spoken with Lopez; he did not consider whether Lopez did not "stop, look, or listen" when he rendered his opinion; he opined that the train crew was inadequately trained without reviewing any training documents; and has "used his own 'interpretation' and extrapolation of the train crew's testimony" to opine that the crew understood Lopez was not going to stop. (ECF No. 137 at 5)

Lopez argues that Dr. Berkowitz is qualified because he has "extensive experience in designing and overseeing entire transportation systems" which includes trains and train crews as well as establishing the safety rules that train crew are to follow. (ECF No. 226 at 3) He contends that Dr. Berkowitz's opinions are relevant to evaluate the train crew's subjective appreciation of the specific hazard and relevant to CSXT's affirmative defenses regarding Lopez's negligence. (*Id.*).

The Court holds that Dr. Berkowitz's testimony is relevant to the remaining claim. In addition, Dr. Berkowitz's testimony is relevant to the issue of whether Lopez was contributorily negligent. The issue of Lopez's negligence will expand the scope of relevant evidence into areas of the train's operation which might otherwise not be relevant.

The Court further holds that Dr. Berkowitz is qualified to testify as an expert on the issues objected to by CSXT. Dr. Berkowitz has a Ph.D. in Transportation Planning and Engineering and has significant experience over the course of several decades as an engineer working on public transportation systems, including experience with railroads and crossing design, planning and

safety. (ECF No. 225-1) As Lopez notes in his response, Dr. Berkowitz's expertise regarding railroad crossings necessarily requires significant expert knowledge regarding train handling and operations. (ECF No. 226 at 3–4) Expertise regarding crossing design and safety requires expertise regarding the component parts, including how trains operate, human factors relating to train crews, and rules and regulations for operating trains. It does not seem possible to be an expert in designing railroad crossings and in railroad crossing safety without also being an expert in the operations of trains that will be using the crossings—train operations are a critical component of designing crossings and crossing safety. To the extent that CSXT contends that an individual with experience physically operating a train would be a more authoritative or better expert than Dr. Berkowitz on these issues, that may very well be so. But that is not the issue here. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 744 (stating that a party does not have to "demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable"). Dr. Berkowitz's opinions are "based on extensive and specialized experience" that he applies to the facts of this case. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999); *Langbord v. U.S. Dep't of the Treasury*, No. CIV.A. 06CV05315, 2009 WL 1312576, at *3 (E.D. Pa. May 7, 2009) ("It is also well-established that an expert's reliable methodology may consist primarily of applying his personal knowledge and experience to the facts of a case."). Further, CSXT can probe this during cross-examination. Accordingly, Dr. Berkowitz's expert opinions satisfy the requirements of Rule 702.

**21. Defendant's Motions to Exclude the Opinions of Plaintiff's Expert Mr. Richard Riley are Moot.**

CSXT filed three motions with respect to the testimony of Richard Riley: (1) exclude the testimony of Riley because Lopez did not comply with Federal Rule of Civil Procedure 26 and timely provide CSXT with Riley's full and final report, Riley lacks the requisite qualifications or expertise to opine as an expert, and Riley's opinions lack foundation, are speculative, and are not reliable. (ECF Nos. 142 at 2–3; 143); (2) preclude the testimony of Riley regarding his status as an amputee because such testimony is irrelevant and any probative value is substantially outweighed by the danger of unfair prejudice (ECF Nos. 180; 181 at 2–4); and (3) exclude the testimony of Riley for not providing all of the opinions that Riley will express or the basis and reasons for them in violation of Federal Rules of Civil Procedure 26 and 37 (ECF Nos. 144, 145).

Lopez did not file a response to these three motions. At the pretrial conference held on October 23, 2020, counsel for Lopez stated that Riley would not be called as a witness. Accordingly, CSXT's three motions about the testimony of Riley (ECF Nos.142, 144, 180) are moot.

## IV. Conclusion

For the forgoing reasons, the Court:

1. **DENIES** Defendant's Motion to Exclude Testimony Regarding Plaintiff's Alleged Need for Adaptive Equipment (ECF Nos. 150, 151);

2. **GRANTS** Defendant's Motion to Exclude Evidence Relating to Plaintiff's Allegations that CSXT Modified and/or Erased any Recorded Data (ECF Nos. 152, 153);

3. **GRANTS** Defendant's Motion to Exclude Evidence Relating to Plaintiff's Allegations that CSXT "Blames the Public" for Accidents at Crossings (ECF Nos. 154, 155);

4. **GRANTS IN PART** and **DEFERS IN PART** Defendant's Motion to Exclude Evidence Regarding Plaintiff's Competency to Participate in Trial (ECF Nos. 156, 157);

5. **GRANTS IN PART** Defendant's Motion to Exclude Evidence Regarding any Crossing Incidents or Accidents at Other than the Ferndale Crossing (ECF Nos. 160, 161);

6. **DENIES** Defendant's Motion to Exclude Evidence Relating to Claims Decided on Summary Judgment (ECF Nos. 162, 163);

7. **DEFERS** Ruling on Defendant's Motion to Exclude Evidence of the Parties' Financial Condition (ECF No. 164, 165);

8. **GRANTS** Defendant's Motion to Exclude all Documentary and Testimonial Evidence Regarding any Federal Railroad Administration Incident Reports Filed Related to this Matter (ECF Nos. 166, 167);

9. **GRANTS** Defendant's Motion to Exclude Evidence Regarding United States Hazardous Material Instruction for Rail Effective 1-1-12 (ECF Nos. 168, 169);

10. **DENIES** Defendant's Motion to Exclude Evidence Regarding any Locomotive Incident History Reports (ECF Nos. 170, 171);

11. **DENIES** Defendant's Motion to Exclude Evidence Regarding Photographs of a Locomotive Cab Interior (ECF Nos. 172, 173);

12. **DENIES** Defendant's Motion to Exclude Evidence of any and all References to the Manual of Uniform Traffic Control Devices to show Negligence (ECF Nos 174, 175);

13. **GRANTS IN PART** Defendant's Motion to Exclude Evidence Regarding any Other Incidents or Accidents (ECF Nos. 176, 177);

14. **DENIES** Defendant's Motion to Exclude Speculative Testimony Regarding Plaintiff's Phantom Pain Damage Claim (ECF Nos. 178, 179);

15. **DENIES** Defendant's Motion to Exclude Post-Incident Classifications of Plaintiff (ECF No. 186, 187);

16. **DENIES** Defendant's Motion to Exclude Evidence Regarding Locomotive Work Packages for CSXT 2529 and CSXT 4411 (ECF Nos. 190, 191);

17. **GRANTS** Defendant's Motion to Exclude Evidence Regarding all Track Inspection Documents and any Testimony Regarding Track Maintenance or Repair (ECF Nos. 184, 185);

18. **DENIES** Defendant's Motion to Exclude the Opinions of Plaintiff's Expert Dr. Carl M. Berkowitz (ECF Nos. 136, 137)

19. **DENIES** Defendant's Motion to Exclude the Opinions of Plaintiff's Expert Mr. Colon R. Fulk (ECF Nos. 140, 141);

20. **DENIES IN PART** Defendant's Motion to Partially Exclude the Opinions and Testimony of Dr. Robert L. Rundorff, M.D. (ECF Nos. 146, 147);

21. **DENIES** Defendant's Motion to Exclude Timothy Wagner's Deposition Testimony and Report (ECF Nos. 188, 189);

22. Finds that Defendant's Motion to Preclude Plaintiff's Expert Mr. Richard Riley's Testimony Regarding his Status as an Amputee (ECF Nos. 180, 181) is **MOOT**;

23. Finds that Defendant's Motion to Exclude the Opinions of Plaintiff's Expert Mr. Richard Riley (ECF Nos. 142, 143) is **MOOT**; and

24. Finds that Defendant's Motion to Exclude the Opinions of Plaintiff's Expert Mr. Richard Riley Pursuant to Fed. R. Civ. P. 37 (ECF Nos. 144, 145) is **MOOT**.

An appropriate order follows.

JONATHAN LOPEZ, by his cousin and )
duly appointed guardian ad litem, )
RAMONA ILARRAVA )
                            )
        Plaintiff, )
                            )
     v. )
                            )
CSX TRANSPORTATION, INC., )
                            )
        Defendant. )

CIVIL ACTION NO. 3:14-257

JUDGE KIM R. GIBSON

## ORDER

**AND NOW**, this ⟨6th⟩ day of July, 2021, upon consideration of Plaintiff's Motions to:

1. Exclude Testimony Regarding Plaintiff's Alleged Need for Adaptive Equipment (ECF Nos. 150, 151);

2. Exclude Evidence Relating to Plaintiff's Allegations that CSXT Modified and/or Erased any Recorded Data (ECF Nos. 152, 153);

3. Exclude Evidence Relating to Plaintiff's Allegations that CSXT "Blames the Public" for Accidents at Crossings (ECF Nos. 154, 155);

4. Exclude Evidence Regarding Plaintiff's Competency to Participate in Trial (ECF Nos. 156, 157);

5. Exclude Evidence Regarding any Crossing Incidents or Accidents at Other than the Ferndale Crossing (ECF Nos. 160, 161);

6. Exclude Evidence Relating to Claims Decided on Summary Judgment (ECF Nos. 162, 163);

7. Exclude Evidence of the Parties' Financial Condition (ECF No. 164, 165);

8. Exclude all Documentary and Testimonial Evidence Regarding any Federal Railroad Administration Incident Reports Filed Related to this Matter (ECF Nos. 166, 167);

9. Exclude Evidence Regarding United States Hazardous Material Instruction for Rail Effective 1-1-12 (ECF Nos. 168, 169);

10. Exclude Evidence Regarding any Locomotive Incident History Reports (ECF Nos. 170, 171);

11. Exclude Evidence Regarding Photographs of a Locomotive Cab Interior (ECF Nos. 172, 173);

12. Exclude Evidence of any and all References to the Manual of Uniform Traffic Control Devices to show Negligence (ECF Nos 174, 175);

13. Exclude Evidence Regarding any Other Incidents or Accidents (ECF Nos. 176, 177);

14. Exclude Speculative Testimony Regarding Plaintiff's Phantom Pain Damage Claim (ECF Nos. 178, 179);

15. Exclude Post-Incident Classifications of Plaintiff (ECF No. 186, 187);

16. Exclude Evidence Regarding Locomotive Work Packages for CSXT 2529 and CSXT 4411 (ECF Nos. 190, 191);

17. Exclude Evidence Regarding all Track Inspection Documents and any Testimony Regarding Track Maintenance or Repair (ECF Nos. 184, 185);

18. Exclude the Opinions of Plaintiff's Expert Dr. Carl M. Berkowitz (ECF Nos. 136, 137)

19. Exclude the Opinions of Plaintiff's Expert Mr. Colon R. Fulk (ECF Nos. 140, 141);

20. Partially Exclude the Opinions and Testimony of Dr. Robert L. Rundorff, M.D. (ECF Nos. 146, 147);

21. Exclude Timothy Wagner's Deposition Testimony and Report (ECF Nos. 188, 189)

22. Preclude Plaintiff's Expert Mr. Richard Riley's Testimony Regarding his Status as an Amputee (ECF Nos. 180, 181);

23. Exclude the Opinions of Plaintiff's Expert Mr. Richard Riley (ECF Nos. 142, 143); and

24. Exclude the Opinions of Plaintiff's Expert Mr. Richard Riley Pursuant to Fed. R. Civ. P. 37 (ECF Nos. 144, 145);

and for the reasons set forth in the accompanying Memorandum Opinion, it is **HEREBY ORDERED** that the Court:

1. **DENIES** Defendant's Motion to Exclude Testimony Regarding Plaintiff's Alleged Need for Adaptive Equipment (ECF Nos. 150, 151);

2. **GRANTS** Defendant's Motion to Exclude Evidence Relating to Plaintiff's Allegations that CSXT Modified and/or Erased any Recorded Data (ECF Nos. 152, 153);

3. **GRANTS** Defendant's Motion to Exclude Evidence Relating to Plaintiff's Allegations that CSXT "Blames the Public" for Accidents at Crossings (ECF Nos. 154, 155);

4. **GRANTS IN PART** and **DEFERS IN PART** Defendant's Motion to Exclude Evidence Regarding Plaintiff's Competency to Participate in Trial (ECF Nos. 156, 157);

5. **GRANTS IN PART** Defendant's Motion to Exclude Evidence Regarding any Crossing Incidents or Accidents at Other than the Ferndale Crossing (ECF Nos. 160, 161);

6. **DENIES** Defendant's Motion to Exclude Evidence Relating to Claims Decided on Summary Judgment (ECF Nos. 162, 163);

7. **DEFERS** Ruling on Defendant's Motion to Exclude Evidence of the Parties' Financial Condition (ECF No. 164, 165);

8. **GRANTS** Defendant's Motion to Exclude all Documentary and Testimonial Evidence Regarding any Federal Railroad Administration Incident Reports Filed Related to this Matter (ECF Nos. 166, 167);

9. **GRANTS** Defendant's Motion to Exclude Evidence Regarding United States Hazardous Material Instruction for Rail Effective 1-1-12 (ECF Nos. 168, 169);

10. **DENIES** Defendant's Motion to Exclude Evidence Regarding any Locomotive Incident History Reports (ECF Nos. 170, 171);

11. **DENIES** Defendant's Motion to Exclude Evidence Regarding Photographs of a Locomotive Cab Interior (ECF Nos. 172, 173);

12. **DENIES** Defendant's Motion to Exclude Evidence of any and all References to the Manual of Uniform Traffic Control Devices to show Negligence (ECF Nos 174, 175);

13. **GRANTS IN PART** Defendant's Motion to Exclude Evidence Regarding any Other Incidents or Accidents (ECF Nos. 176, 177);

14. **DENIES** Defendant's Motion to Exclude Speculative Testimony Regarding Plaintiff's Phantom Pain Damage Claim (ECF Nos. 178, 179);

15. **DENIES** Defendant's Motion to Exclude Post-Incident Classifications of Plaintiff (ECF No. 186, 187);

16. **DENIES** Defendant's Motion to Exclude Evidence Regarding Locomotive Work Packages for CSXT 2529 and CSXT 4411 (ECF Nos. 190, 191);

17. **GRANTS** Defendant's Motion to Exclude Evidence Regarding all Track Inspection Documents and any Testimony Regarding Track Maintenance or Repair (ECF Nos. 184, 185);

18. **DENIES** Defendant's Motion to Exclude the Opinions of Plaintiff's Expert Dr. Carl M. Berkowitz (ECF Nos. 136, 137)

19. **DENIES** Defendant's Motion to Exclude the Opinions of Plaintiff's Expert Mr. Colon R. Fulk (ECF Nos. 140, 141);

20. **DENIES IN PART** Defendant's Motion to Partially Exclude the Opinions and Testimony of Dr. Robert L. Rundorff, M.D. (ECF Nos. 146, 147);

21. **DENIES** Defendant's Motion to Exclude Timothy Wagner's Deposition Testimony and Report (ECF Nos. 188, 189);

22. Finds that Defendant's Motion to Preclude Plaintiff's Expert Mr. Richard Riley's Testimony Regarding his Status as an Amputee (ECF Nos. 180, 181) is **MOOT**;

23. Finds that Defendant's Motion to Exclude the Opinions of Plaintiff's Expert Mr. Richard Riley (ECF Nos. 142, 143) is **MOOT**; and

24. Finds that Defendant's Motion to Exclude the Opinions of Plaintiff's Expert Mr. Richard Riley Pursuant to Fed. R. Civ. P. 37 (ECF Nos. 144, 145) is **MOOT**.


BY THE COURT:

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**