## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN LOPEZ, by his cousin and duly appointed guardian ad litem, RAMONA ILARRAVA | ) ) ) | Case No. 3:14-cv-257 |
| Plaintiff, | ) ) | |
| v. | ) ) | JUDGE KIM R. GIBSON |
| CSX TRANSPORTATION, INC., | ) ) | |
| Defendant. | ) ) | |

<u>MEMORANDUM OPINION</u>

Pending before the Court is Defendant CSX Transportation's ("CSXT") "Motion for Recusal and/or Disqualification of the Honorable Judge Kim R. Gibson" and brief in support. (ECF Nos. 283, 284)  Plaintiff Jonathan Lopez, by his cousin and duly appointed guardian ad litem, Ramona Ilarrava, has filed a response and brief in opposition.  (ECF Nos. 304, 305)  This motion is fully briefed and ripe for disposition.  For the following reasons, the Court **DENIES** CSXT's Motion.

I.      **Background**

      a.  **Procedural History**

On January 18, 2013, a CSXT-operated train struck Lopez as he crossed rail tracks in Cambria County, Pennsylvania.  (ECF No. 63 at 2–4)  Due to an irretrievable breakdown between Lopez and his counsel,[1] his counsel sought to withdraw; the Court granted this request.  (ECF Nos. 89, 92)  Lopez then proceeded pro se.

---

[1] A more detailed discussion of the incidents leading to the irretrievable breakdown can be found in ECF No. 231.

On February 19, 2019, after nearly five years of litigation, including the resolution of dispositive motions, CSXT moved for a continuance of trial and an independent medical examination of Lopez based on Lopez's actions toward his counsel, social media posts, and a psychiatric evaluation of Lopez commissioned by CSXT based on those social media posts. (ECF Nos. 84, 85)  In the motion, CSXT stated that Lopez's social media posts "raise substantial and legitimate questions about [Lopez's] possible delusional and paranoid behavior as well as his ability to comprehend and participate in []his own legal matter."  (ECF No. 85 at 1)  As attachments, CSXT included numerous social media posts detailing Lopez's paranoid delusions regarding CSXT and this litigation.  (*Id.* at 20–99)  The Court granted CSXT's motion to continue trial.  (ECF No. 93)  On August 23, 2019, the Court held a pretrial conference, consolidated with argument on CSXT's motion for an independent medical exam.  (ECF No. 99)

On August 23, 2019, the Court granted CSXT's Motion for an independent medical examination of Lopez (ECF No. 84) and ordered Lopez to undergo a medical examination to determine his competency (ECF No. 100).  The Court also determined that the circumstances were sufficient to trigger the Court's independent obligation under Federal Rule of Civil Procedure 17(c) to inquire into Lopez's competency.  (ECF No. 100 at 3)  The Court stated that it would resolve the issue of Lopez's competency following the examination, briefing from the parties, and a hearing.  (*Id.* at 3–4)  The Court continued trial until March 9, 2020, to permit sufficient time to resolve the issue of Lopez's competency.  (ECF No. 101)

Shortly after the entry of the continuance, Lopez was arrested on criminal charges in the Southern District of New York and detained until December 19, 2019.  (*United States v. Lopez*, No. 19-cr-899 (S.D.N.Y.))  Due to his detention, Lopez was unable to undergo the medical examination

as ordered.  At the pretrial conference on February 10, 2020—at which Lopez did not appear—the Court again ordered Lopez to undergo a medical examination.  (ECF No. 106)  The Court also identified a doctor who was willing to conduct the examination and two dates and times during which the doctor would be available for the examination.  (*Id.*)

At the pretrial conference, CSXT's counsel informed the Court that Lopez had been posting on social media that he did not intend to continue pursuing this case.  (ECF No. 105)  On February 24, 2020, the Court received Lopez's request for voluntary dismissal with prejudice.  (ECF No. 108)  On February 26, 2020, despite having previously informed the Court that there were "substantial and legitimate questions about [Lopez's] . . . ability to comprehend and participate in []his own legal matter" (ECF No. 85 at 1), CSXT notified the Court that it had "no objection to [Lopez's] Motion and [did] not oppose the Court's dismissal of this action with prejudice."  (ECF No. 109)

On March 6, 2020, the Court appointed Ramona Ilarrava, Lopez's cousin, as his guardian ad litem for purposes of this action.  (ECF No. 110)  In the order appointing her as guardian ad litem, the Court noted that "[f]ollowing inquiry by the Court, Ms. Ilarrava, on March 6, 2020, advised the Court she was willing and able to serve as guardian ad litem in this case."  (ECF No. 110 at 5)

On March 23, 2020, Lopez informed the Court that, contrary to his previous message stating that he wanted to dismiss the case, he would be "hiring another attorney to take representation to my case" (ECF No. 113) and asked if CSXT would give him a structured settlement if he agreed to dismiss the case (ECF No. 114).

3

After the appointment of Ms. Ilarrava as Lopez's guardian ad litem, Lopez's former attorney, who had withdrawn, returned to the case as counsel for Lopez's guardian ad litem. (ECF No. 116)

CSXT filed a "Motion to Remove Plaintiff's *Guardian Ad Litem*"on August 31, 2020. (ECF Nos. 122, 123) The Court denied the motion. (ECF No. 231) CSXT appealed the denial and requested a stay pending appeal. (ECF Nos. 247, 248) The Court denied the stay and the appeal is still pending. (ECF No. 252)

On June 4, 2020, the Court issued an Amended Trial Order rescheduling trial to begin on November 2, 2020. (ECF No. 118) On October 28, 2020—five days before trial was scheduled to begin—the Court continued trial due to COVID-19, rescheduling it to begin on June 14, 2021. (ECF No. 253) On March 3, 2021, trial was again continued, this time until August 23, 2021. (ECF No. 262)

### b.  Lopez's Criminal Case

A complaint was filed against Lopez in the United States District Court for the Southern District of New York on September 17, 2019, and Lopez was arrested the next day. (*Lopez*, 1:19-cr-899, at ECF No. 2). On December 12, 2019, a two-count indictment was filed charging Lopez with making threats against federal officials and making interstate threats. (*Id.* at ECF No. 9) On June 15, 2021, the court in Lopez's criminal case found that he was "mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense" and remanded him to the custody of the Attorney General for hospitalization and evaluation. (*Id.* at ECF Nos. 61, 62)

## II.   Legal Standard

### a.  Recusal Standard

"Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).[2] "The test for recusal under § 455(a) is whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned."  *In re Kensington Int'l Ltd.*, 368 F.3d 289, 301 (3d Cir. 2004); *see In re Prudential Ins. Co. of Am. Sales Practice Litig., Agent Actions*, 148 F.3d 283, 343 (3d Cir. 1998) ("The test is whether a reasonable person, knowing all of the circumstances of record, would harbor doubts about the judge's impartiality.").  This is an objective inquiry and it is "not concerned with the question whether a judge actually harbors bias against a party."  *United States v. Kennedy*, 682 F.3d 244, 258 (3d Cir. 2012).  This is because § 455(a) "aims not only to protect both the rights of the individual litigants, but also to promote the public's confidence in the judiciary."  *Id.*

In deciding whether § 455 requires recusal, "discretion is confided in the district judge . . . because the judge presiding over a case is in the best position to appreciate the implications of those matters alleged in a recusal motion."  *Kensington*, 353 F.3d at 224.  In the absence of proof that a person would reasonably question the judge's impartiality, a judge "has an affirmative duty not to recuse himself."  *Dean v. Philadelphia Gas Works*, No. CV 19-04266, 2020 WL 7695751, at *6 (E.D. Pa. Dec. 28, 2020) (quoting *Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 872 F. Supp. 1346, 1349 (E.D. Pa. 1994)).

---

[2] CSXT does not seek recusal under 28 U.S.C. § 144.

"'Because a judge is presumed to be impartial, the party seeking disqualification bears the substantial burden of proving otherwise.'" *Pondexter v. Allegheny Cty. Hous. Auth.*, No. CIV.A. 11-857, 2012 WL 1621370, at *2 (W.D. Pa. May 9, 2012) (quoting *Kuperman v. State of New Hampshire*, Civ. A. No. 09–cv–66–JD, 2009 WL 1026413, at *1 (D.N.H. Apr. 15, 2009)).  "[W]hen proceedings are brought under 28 U.S.C. § 455(a), a judge need not accept as true the motion's factual allegations, but may contradict them with facts drawn from [the Court's] own personal knowledge." *Pondexter*, 2012 WL 1621370, at *2 (quoting *Massachusetts Sch. of L. at Andover*, 872 F. Supp. at 1349); *see United States v. Balistrieri*, 779 F.2d 1191, 1202 (7th Cir. 1985), *overruled on other grounds by Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016) (stating that the judge "is free to make credibility determinations, assign to the evidence what he believes to be its proper weight, and to contradict the evidence with facts drawn from his own personal knowledge").

## III.   Discussion

### a.   The Parties' Arguments

CSXT argues that the Court should recuse itself from this case for two reasons.  First, CSXT argues that the Court should recuse itself based on ex parte communications between the Court and Ms. Ilarrava prior to her appointment as guardian ad litem.  (ECF No. 284 at 6–10)  Second, CSXT argues that the Court should recuse itself based on the possibility that it may be a witness in Lopez's criminal case and because the criminal case has not yet been resolved.  (*Id.* at 11–13)

Lopez's guardian ad litem contends that, by definition, the communication was not an ex parte communication because she was not Lopez's guardian ad litem that that time and was not a party to the case.  (ECF No. 305 at 2–3)  Even if the communication was ex parte, she argues it was permissible because it was necessary and proper to ensure that Lopez was properly

6

represented. (*Id.* at 4–6)  Next, she contends that CSXT lacks standing to request recusal based on the process used to appoint a guardian ad litem or to seek recusal based on the criminal case.  (*Id.* at 6–7)  Finally, she argues that CSXT fails to identify any conflict or appearance of a conflict based on Lopez's criminal case that would be adverse to CSXT.  (*Id.* at 7)

### b. CSXT's Motion for Recusal is Untimely

Although 28 U.S.C. § 455 does not contain an express timeliness requirement, the Third Circuit has held that a party seeking to disqualify a judge under § 455 must do so in a timely manner. *See Kensington*, 368 F.3d at 312.  "The judicial process can hardly tolerate the practice of a litigant with knowledge of circumstances suggesting possible bias or prejudice holding back, while calling upon the court for hopefully favorable rulings, and then seeking recusal when they are not forthcoming." *Smith v. Danyo*, 585 F.2d 83, 86 (3d Cir. 1978).  In the recusal context, to the extent that there is a burden of disclosure, that burden is to be placed on the judge to disclose possible grounds for disqualification. *Kensington*, 368 F.3d at 313.  "[W]hen a party's attorney is aware of the grounds supporting recusal, but fails to act until the judge issues an adverse ruling, the recusal motion is not timely." *Id.* at 314–15.

CSXT's litigation strategy appears to be delay.[3]  The latest attempt to delay trial in this case is made in the hope that Lopez will become competent and be able to take control of this litigation from his guardian ad litem.  The time period for that the occur, if ever, is unknown.

_____

[3] CSXT has repeatedly sought to delay trial, including:  (1) seeking to disqualify opposing counsel two weeks before trial was scheduled to begin (ECF No. 198); (2) seeking to remove Lopez's guardian ad litem two months before trial was scheduled to begin (ECF No. 122); (3) seeking to stay trial based on COVID-19 and Lopez not planning to appear in-person at trial (ECF No. 232); (4) seeking to stay trial pending appeal of the Court's ruling declining to remove Lopez's guardian ad litem (ECF No.248); and (5) moving to stay trial to allow time to see whether Lopez could become competent (ECF No. 270).

However, if Lopez is able to take control of this case prior to trial it is likely that either:  (1) Lopez will dismiss the case with prejudice (after the statute of limitations has expired), or (2) his attorney will once again withdraw forcing him to appear pro se and be unable to present his case at trial.

With regard to recusal based on communications with Ms. Ilarrava, CSXT contends that the Court "never disclosed to the parties in this case that the ex parte communication occurred." (ECF No. 284 at 5)  Contrary to this claim, the Court disclosed the communication with Ms. Ilarrava the same day that it occurred.  In the March 6, 2020, Order appointing Ms. Ilarrava, the Court explained that, "[f]ollowing *inquiry by the Court*, Ms. Ilarrava, on March 6, 2020, *advised the Court* that she was willing and able to serve as a guardian ad litem in this case"  (ECF No. 110. at 3 (emphasis added)).  CSXT provides no reason why—having been notified of the Court's communication with Ms. Ilarrava the same day it occurred—it waited over fifteen months to raise an issue with this communication and did so mere weeks before trial was scheduled to begin.[4] Since March 6, 2020, there have been dozens of pretrial motions filed—the majority of which were filed by CSXT—that have since been resolved by the Court.  *See Danyo*, 585 F.2d at 86 (considering whether the party seeking recusal participated in pretrial motion litigation or invoked the participation of the court since first learning of a bias or prejudice as a factor to determine if a recusal motion was timely); *Kensington*, 368 F.3d at 312 (applying the factors identified in *Danyo*

---

[4] Further, rather than promptly alerting the Court to its concern, CSXT instead waited until after it spent a substantial portion of its deposition of Ms. Ilarrava inquiring about the process by which she was appointed Lopez's guardian ad litem.  It is telling that CSXT did not include a full copy of a transcript of that deposition in its motion for recusal, and its focus during her deposition on her appointment as guardian ad litem only serves to bolster the conclusion that CSXT knew of this alleged bias long ago and strategically waited to raise it until right before trial. In addition, the appropriate time for determining the timeliness of a motion for recusal is when a litigant has "knowledge of circumstances *suggesting possible* bias or prejudice," not after the litigant with knowledge of circumstances suggesting possible bias or prejudice has conducted further investigation into the possible bias or prejudice. *Danyo*, 585 F.2d at 86.

to motions for recusal under § 455).   Of course, since the alleged bias would have existed since March 2020, CSXT's basis for recusal would apply equally as a basis to vacate all of the Court's rulings since that date.   Further, the motion for recusal was made mere weeks before trial, necessitating a continuance if granted.   *See Danyo*, 585 F.2d at 86 (stating that the judicial process cannot "tolerate the practice of waiting until the eve of trial and then resorting" to seeking recusal in order to obtain a continuance).   Thus, the motion for recusal is untimely both because CSXT waited 15 months after learning of the communication to seek recusal, it never raised its belief that these communications suggested bias or prejudice prior to its motion, it waited until the eve of trial to move for recusal, and it sought and received rulings from the Court for numerous motions in the interim.   Thus, the motion for recusal based upon the appointment of the guardian ad litem is untimely and is a transparent attempt to abuse § 455 to obtain another continuance and seek to vacate the rulings on dozens of motions that have been resolved by the Court over the past 15 months.

With regard to recusal based on CSXT's claimed "inherent conflict" caused by Lopez's pending criminal charges, it too is untimely.   (ECF No. 284 at 11)   Lopez was arrested on September 17, 2019, and the indictment against him was filed on December 12, 2019.   (*Lopez*, ECF Nos. 2, 9)   CSXT does not explain why it waited until August 2, 2021—three weeks before trial and over eighteen months after he was indicted—to file this motion.   Although it claims that it filed this motion now because "it is now apparent that [] Lopez's criminal case will not go to trial before the civil case" that explanation is specious.   Not only has it been clear for months that the civil case would go to trial before his criminal case is resolved—a competency hearing was ordered in his criminal case on April 12, 2021 (*Lopez*, ECF No. 45)—CSXT did not file this motion

prior to the November 2020 trial date where trial was rescheduled a mere five days before it was scheduled to begin. And certainly, if the Court has an "inherent conflict," that conflict would have existed since at least December 12, 2019, when Lopez was indicted, and would apply equally to both the Court presiding over the trial and to all of the Court's pretrial rulings over the past nearly two years. Despite this "inherent conflict," CSXT has sought the Court's ruling on dozens of motions since December 12, 2019, without a suggestion that it believed that the Court had an "inherent conflict" in this case. *See Danyo*, 585 F.2d at 86. Just as a party cannot be permitted to use a threat against the presiding judge as a "judge-shopping device," *In re Basciano*, 542 F.3d 950, 957 (2d Cir. 2008), so too the opposing party cannot strategically use that same threat against the presiding judge when (nearly two years later) it decides that it wants to have the judge recused.

Accordingly, CSXT's motion for recusal is denied as untimely.

**c. Even if Timely, CSXT's Motion for Recusal Lacks Merit.**

Even if CSXT's motion for recusal were timely, it would still be denied because both of the bases for recusal identified in the motion are without merit.

**1. The Court's Communication with Ms. Ilarrava was Permitted Under the Code of Conduct for United States Judges and the Court's Impartiality Cannot be Reasonably Questioned**

Canon 3 of the Code of Conduct for United States Judges provides, in relevant part:

(4) A judge should accord to every person who has a legal interest in a proceeding, and that person's lawyer, the full right to be heard according to law. Except as set out below, a judge should not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers. If a judge receives an unauthorized ex parte communication bearing on the substance of a matter, the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested. A judge may:

(a) initiate, permit, or consider ex parte communications as authorized by law;

(b) when circumstances require it, permit ex parte communication for scheduling, administrative, or emergency purposes, but only if the ex parte communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication;

(c) obtain the written advice of a disinterested expert on the law, but only after giving advance notice to the parties of the person to be consulted and the subject matter of the advice and affording the parties reasonable opportunity to object and respond to the notice and to the advice received; or

(d) with the consent of the parties, confer separately with the parties and their counsel in an effort to mediate or settle pending matters.

Of relevance here, the code of conduct permits a judge to engage in ex parte communications "as authorized by law" and for "scheduling, administrative, or emergency purposes." The Court's appointment of a guardian ad litem is authorized by law and is an administrative task. *See Gaddis v. United States*, 381 F.3d 444, 456 (5th Cir. 2004) (stating that a guardian ad litem is an officer of the court whose role is to assist the court); Fed. R. Civ. P. 17(c). The Court's communications relating to identifying and vetting a potential guardian ad litem are also authorized by law and are administrative tasks. Further, CSXT has identified no conflict of interest on the basis of the communication with Ms. Ilarrava or plausible way in which the Court's impartiality might reasonably be questioned. *See N'Jai v. Pittsburgh Bd. of Pub. Educ.*, 487 F. App'x 735, 738 (3d Cir. 2012); *Kinsington*, 368 F.3d at 305 ("We do not hold that ex parte communications alone—in the absence of any conflict of interest—require recusal."). Accordingly, the Court's communication with Ms. Ilarrava prior to her being appointed as guardian ad litem for the purpose of identifying a guardian ad litem for Lopez and vetting her as a potential guardian ad litem was permissible under the code of conduct.

CSXT's contention that the Court was forbidden from searching for and vetting potential guardians ad litem outside of their presence is without support.  In fact, the Third Circuit has contemplated a different process for a court fulfilling its obligations for finding a guardian ad litem than the process that CSXT contends was required.  In *Powell v. Symons*, 680 F.3d 301, 308 (3d Cir. 2012), the Third Circuit found that it was an abuse of discretion for the district court not to have appointed a guardian ad litem and noted that, in the record below: "[t]here is nothing to show that the Magistrate Judge sought counsel, made inquiry of the bar associations, or inquired as to whether law schools that may have clinical programs or senior centers with social workers would be willing to undertake the necessary representation."  This, of course, contemplates that trial courts will "make inquir[ies]" to try to find individuals "willing to undertake" the role of a guardian ad litem.  *Id.*  It also necessarily includes vetting potential guardians ad litem to ensure that they will act in the best interest of the incompetent individual.  *See Gibbs ex rel. Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 136 (3d Cir. 2002) (noting that a guardian ad litem is to "advance the best interests" of the incompetent individual).  Nothing suggests that the Court is to include the opposing party when making inquiries.[5]  Consistent with this, the Ninth Circuit has explained that Rule 17(c) "requires a court to take whatever measures it deems proper to protect an incompetent person during litigation."  *United States v. 30.64 Acres of Land, More or Less, Situated in Klickitat Cty., State of Wash.*, 795 F.2d 796, 805 (9th Cir. 1986).

CSXT contends that the Court should have held a hearing regarding the appointment of Ms. Ilarrava as the guardian ad litem for Lopez.  (ECF No. 284 at 5)  In claiming that such a hearing

---

[5] Especially where, as here, the party for whom the Court is seeking a guardian ad litem is pro se and is unable to meaningfully participate in the process of finding a guardian ad litem due to his paranoid delusions related to the opposing party and the issue of his competency.

is required, CSXT cites to no authority in support of its contention that a hearing is required.  Nor is CSXT's contention that a hearing would have been appropriate valid.  It is the Court's obligation to ensure that incompetent individuals are protected through the appointment of a guardian ad litem, not the opposing party's obligation.  The opposing party's input regarding who would be an appropriate individual to act in the incompetent person's best interest is irrelevant.  It is unclear exactly what CSXT contends would have occurred at a hearing, since at that time Lopez was both delusional and proceeding pro se after his attorney withdrew.  Further, a district court has "substantial discretion" in selecting a guardian ad litem who will act in the incompetent person's best interest.  *Gardner by Gardner v. Parson*, 874 F.2d 131, 139 (3d Cir. 1989); *Wright v. Wenerowicz*, No. 2:14-CV-00245, 2018 WL 1081982, at *4 (E.D. Pa. Feb. 28, 2018) (stating that "[a] district court has 'substantial discretion'" to decide who is best suited to act on the party's behalf." (citation omitted)).  CSXT points to no authority that a district court's "substantial discretion" is tempered by consultation with the opposing party regarding the suitability of a guardian ad litem.

CSXT's attempts to manufacture some type of bias with regard to the appointment of a guardian ad litem are also misplaced.  CSXT attempts to argue that the Court is biased because the Court stated that if Lopez did not attend the court-directed examination, then "*the Court, upon request from Defendant, will consider dismissing the action for failure to prosecute*" but the Court later did not dismiss for failure to prosecute.  (ECF No. 284 at 8 (quoting ECF No. 106) (emphasis in original)).  CSXT argues that appointing a guardian ad litem "implicitly pushed Mr. Lopez's case forward to avoid a possible dismissal even though the Court already previewed dismissal as a possible outcome."  (ECF No. 284 at 9)  Of course, had the Court done so, it would have clearly

abused its discretion under Rule 17(c). *See Mondelli v. Berkeley Heights Nursing & Rehab. Ctr.*, 1 F.4th 145, 149 (3d Cir. 2021) ("A court's obligation under Rule 17 to appoint a guardian ad litem for an incompetent person is mandatory."); *see also Davis v. Walker*, 745 F.3d 1303, 1310–12 (9th Cir. 2014); *Powell*, 680 F.3d at 307 (requiring a sua sponte determination if a pro se party is incompetent where there is "some verifiable evidence of incompetence"). At its core, this argument is nonsensical: the Court is biased because it failed to abuse its discretion.

CSXT also finds bias in the Court directing the guardian ad litem is to "determine the appropriate path forward." (ECF No. 284 at 8) It suggests some sort of conspiracy between the Court and Ms. Ilarrava because she had already agreed that this case will proceed. The Court was obligated to identify a guardian ad litem who would attempt to pursue his case. A guardian ad litem who would have simply moved to dismiss the case would, by definition, not have been a suitable guardian ad litem and the Court exercising its supervisory obligations to oversee the guardian ad litem could not permit a guardian to simply dismiss a claim with prejudice that had survived summary judgment for no legitimate reason. In addition, the Court's use of the phrase "determine the appropriate path forward" was not a subtle nod to a conspiracy to push this case forward but a legitimate order to the guardian ad litem—as an officer of the court—to determine the appropriate path forward since she was the guardian ad litem for an incompetent person who was proceeding pro se and thus would need to find an attorney willing to take the case in order to pursue the case.[6]

---

[6] Relatedly, CSXT also argues that the Court shows its bias by stating that the case was "meritorious" or had "merit" to Ms. Ilarrava and in its order appointing her as guardian ad litem. (ECF No. 284 at 7) CSXT, however, takes the use of the word merit out of context and contorts its meaning to suggest that the Court is biased against it. In the March 6, 2020, Order, the Court stated that "Lopez's claim survived summary judgment" and, two sentences later, states that "[t]he case has sufficient merit to proceed to

CSXT also argues that an ex parte communication with Ms. Ilarrava regarding appointing her as guardian ad litem is impermissible because she "is a member of Mr. Lopez's family [so the Court] should have refrained from independent communication on this basis alone." (ECF No. 284 at 9)  Since she now intends to testify as a witness regarding her observations of, and interactions with, Lopez, CSXT now contends there must be some sort of conflict between her role as guardian ad litem and her testifying as a witness in this case.  It appears, as best as the Court can tell, that Ms. Ilarrava was not identified as a potential witness until well after she was appointed by the Court as Lopez's guardian ad litem.  (*See* ECF No. 87 (not including Ms. Ilarrava on Plaintiff's witness list filed on February 15, 2019))  CSXT provides no authority for its argument that a guardian ad litem cannot also be a fact witness at trial.  If guardians ad litem were prohibited from testifying at trial as a fact witness, one would expect the law to exclude family and friends from being able to serve as guardians ad litem for infants and incompetent individuals as one would expect them frequently to be called upon to testify as fact witnesses.

Elsewhere in its motion, CSXT states that the manner in which the guardian ad litem was appointed "could also give rise to the specter that [the Court] appointed the [guardian ad litem] for the explicit purpose of advocating for the success of this litigation rather than remaining disinterested." (ECF No. 284 at 8–9)  CSXT's motion and brief in support each only contain one reference to Rule 17(c)—stating that it filed a motion to remove the guardian ad litem because the appointment was improper under Rule 17(c)—and nowhere in either does CSXT acknowledge

---

trial." (ECF No. 110 at 5)  Elsewhere, the Court referred to the remaining claim as a "potentially meritorious cause of action" and noted that it was potentially meritorious because it had "survived a motion for summary judgment." (ECF No. 231 at 27)  In context, the reference to the claim being meritorious refers to the claim surviving summary judgment and is not an expression of the Court's opinion regarding the underlying merits of that claim at trial.

that Rule 17(c) places obligations on a court.  CSXT's filings seeking recusal based upon the appointment of a guardian ad litem make clear that it fundamentally misunderstands the Court's obligations under Rule 17(c):  "to ensure that incompetent persons are properly represented." *Mondelli v. Berkeley Heights Nursing & Rehab. Ctr.*, 1 F.4th 145, 148 (3d Cir. 2021).  Appointing a guardian ad litem who would dismiss with prejudice a claim that had survived summary judgment without there being a settlement agreement would "default both the court's obligations under Rule 17(c) and the requirements of justice." *Scannavino v. Fla. Dep't of Corr.*, 242 F.R.D. 662, 667 (M.D. Fla. 2007).  In essence, CSXT's argument for recusal is that a district court faithfully fulfilling its obligations under Rule 17(c) is biased and must recuse because it complied with Rule 17(c).

CSXT also fundamentally misunderstands that role of a guardian ad litem.  A guardian ad litem is not a normal party to the litigation but "is an officer of the court with 'full responsibility to assist the court to secure a just, speedy, and inexpensive determination of the action.'" *Gaddis*, 381 F.3d at 456 (quoting *Noe v. True*, 507 F.2d 9, 12 (6th Cir. 1974)); *see Wright v. Wenerowicz*, No. 2:14-CV-00245, 2018 WL 1081982, at *3 (E.D. Pa. Feb. 28, 2018).  A guardian ad litem acts under the Court's supervision. *Neilson v. Colgate–Palmolive Co.*, 199 F.3d 642, 652 (2d Cir. 1999); *Dacanay v. Mendoza*, 573 F.2d 1075, 1079 (9th Cir. 1978) (stating that when there is a guardian ad litem "every step in the proceeding occurs under the aegis of the court"); *AT&T Mobility, LLC v. Yeager*, 143 F. Supp. 3d 1042, 1052 (E.D. Cal. 2015).

Finally, CSXT once again takes great pains to point out Lopez's desire is to dismiss this case.  The Court, once again, is compelled to remind CSXT about why Lopez wants to dismiss the

case: his paranoid delusions that CSXT is leading a conspiracy to have him murdered to stop him from pursuing this case and that having him found incompetent is a step toward that end.[7] When pointing out Lopez's desire to dismiss the case, CSXT does not just omit this motivation but also omits Lopez's stated belief that CSXT will settle with him after he dismisses the case (and after the statute of limitations has expired) and that Lopez has on occasion expressed a desire to pursue his case.

Accordingly, CSXT falls far short of identifying any basis for recusal based upon the process used by the Court to appoint a guardian ad litem for Lopez.[8]

### 2. Lopez's Pending Criminal Case Does Not Warrant Recusal

Lopez's pending criminal case also does not merit recusal. In moving for recusal, CSXT does not articulate any way in which it is prejudiced by Lopez's threats or his pending criminal charges.[9] Instead, CSXT's arguments appear to be that Lopez's guardian ad litem would have a

---

[7] Lopez's paranoid delusions are thoroughly detailed in the Court's prior Memorandum Opinion denying CSXT's motion to remove Lopez's guardian ad litem. (ECF No. 231)

[8] Rule 17(c) exists to ensure that incompetent litigants are not abused or taken advantage of by the judicial system or the opposing party. It is hard to imagine a situation that demonstrates the need for Rule 17(c) more than here where an incompetent plaintiff's desire to dismiss his claim with prejudice is motivated by his paranoid delusions about the opposing party conspiring to murder him if he does not dismiss this case and the opposing party is fighting to allow him to be able to do so. Not to mention, that the opposing party was the one who initially raised the issue that its pro se opponent appears to be incompetent, then reversed course when that pro se litigant wanted to dismiss the case with prejudice despite the issue of competency not having been resolved. The Court finds that, under the circumstances described in this Memorandum Opinion, recusal here would undermine "the public's confidence in the judiciary." *Kennedy*, 682 F.3d at 258.

[9] In an apparent attempt to get around the timeliness requirement, CSXT does not explicitly argue that the threats themselves are a basis for recusal. Instead, CSXT focuses its objection to the fact that the charges are "pending and unresolved." (ECF No. 284 at 13) CSXT's brief in support also strongly suggests that it believes there would be no conflict if the criminal charges were resolved prior to trial in this case. (See ECF No. 284 at 12 (stating that "there is now no question that Mr. Lopez's civil case will be tried before Mr. Lopez's criminal case") CSXT does not make clear what conflict it believes exists as a result of the criminal charges still pending apart from the threats themselves and its arguments

17

basis for seeking recusal.  Lopez's guardian ad litem opposes the recusal motion on this ground, so it is difficult to imagine how a reasonable person knowing all the circumstances would believe that the Court has a bias or prejudice as a result of Lopez's criminal case.

The cases cited by CSXT do not support its argument for recusal as they are all criminal cases in which the defendant made a threat and the defendant then moved to have the judge recused from his sentencing or motion for post-conviction relief that could have led to the defendant's release.  *See United States v. Cerceda*, 172 F.3d 806 (11th Cir. 1999); *United States v. Greenspan*, 26 F.3d 1001 (10th Cir. 1994); *United States v. Cerrella*, 529 F. Supp. 1373 (S.D. Fla. 1982).  They do not support the position that recusal is required in a civil jury case where the party who did not make the threat is seeking recusal over the objection of the guardian ad litem for the person who made the threat.[10]

In short, "no reasonable person, knowing all of the circumstances of record" (*i.e.,* that CSXT sought recusal based on Lopez's threats and pending criminal case and that Lopez's guardian ad litem opposed recusal and called the alleged conflict of interest "frivolous and baseless"), "would harbor doubts about the [Court's] impartiality."  *Prudential*, 148 F.3d at 343.

Accordingly, CSXT falls far short of meeting its burden for showing a basis for recusal based upon Lopez's pending criminal charges for making threats.

---

repeatedly rely on the threats themselves as a necessary predicate for its recusal argument.  (*See* ECF No. 284 at 12 (arguing that, because threats can be a basis for recusal even when there are no criminal charges brought, recusal is necessary here because there are threats that resulted in criminal charges that have not yet been resolved).

[10]  These cases also undermine CSXT's argument that is necessary to avoid its motion being untimely—that unresolved criminal charges are a basis for recusal separate and apart from the threats themselves—since the threats themselves, and not the pending charges, are the basis for recusal in those cases.

**IV.    Conclusion**

For the foregoing reasons, the Court denies CSXT's "Motion for Recusal and/or Disqualification of the Honorable Judge Kim R. Gibson" as both untimely and on the merits.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN LOPEZ, | ) | |
| | ) | Case No. 3:14-257 |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

AND NOW, this __19th__ day of August 2021, upon consideration of Defendant CSX Transportation's "Motion for Recusal and/or Disqualification of the Honorable Judge Kim R. Gibson" (ECF No. 283), and for the reasons set forth in the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** that Defendant's motion is **DENIED**.

BY THE COURT:

_____

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**